Matthias, J.
 

 C. C. Glasgo, defendant in error, is the owner of a farm consisting of 173 acres in Ash-land county, upon which he resides. In close proximity to the dwelling house is a spring which for many years has constantly furnished an abundant supply of water for domestic purposes. Within a few days after the plaintiff in error, the Logan Gas
 
 *127
 
 Company, had started drilling a gas well upon the Firestone farm, at a point about a half mile from the Glasgo dwelling, the flow of water in the Glasgo spring decreased, and later became dry. Since that time the spring will fill only following heavy rains, and though it furnishes a supply of water during a part of the year, it has remained dry throughout the summer, making it necessary to drill a deep well on said premises to procure a sufficient supply of water. The Firestone farm is east of the Glasgo farm, and between them is an eighty-acre farm owned and occupied by one Haudenschield, upon which is a spring which was in no wise disturbed by the drilling of said well on the Firestone farm, or by a well previously drilled.
 

 Glasgo brought an action against the Logan Gas Company wherein he charged that said company in drilling its well, which was upon a higher level than the premises of the plaintiff, intercepted the stream of underground water which was the source of supply to the plaintiff’s spring, and that the drying up of plaintiff’s spring was caused by the drilling of said well, thereby diverting the underground channel of water and causing plaintiff’s spring to cease flowing.
 

 The trial of the case developed the facts above stated. It was further shown that the defendant company after it had begun drilling for gas and oil, put down a water well near by, from which, at least for a time, the water flowed, and it is now claimed that it was this water well on the Firestone farm that affected the flow of the Glasgo spring.
 

 The defendant offered no evidence, but at the close of the plaintiff’s case moved for a directed
 
 *128
 
 verdict in its favor, which motion was overruled, and thereafter the jury returned a verdict in favor of the plaintiff in the sum of $3,000, upon which judgment was rendered, and that judgment was affirmed by the Court of Appeals.
 

 The question here presented is whether the facts support the judgment or warrant any recovery from the defendant. In the view we take of the law applicable to the facts presented in this case, it may be conceded that in drilling on the Firestone farm the defendant struck a vein of water which supplied Glasgo’s spring. The plaintiff can recover only upon the theory that the facts presented afford to him the benefit of the law which applies to rivers and flowing streams. Plaintiff cannot recover unless a situation is presented whereby the upper owner is deprived of the benefit of the general rule that his land includes not only the surface but all that is beneath, whether it is solid rock or porous ground or part soil and part water. It is elementary that the person who owns the surface may dig therein, and apply all that is found to his own purpose at his free will and pleasure. “-If, in the exercise of such right, he intercepts or drains off the water collected from underground springs in his neighbour’s well, this inconvenience to his neighbour falls within the description of
 
 damnum absque injuria,
 
 which cannot become the ground of an action. ’ ’ The above is a concise statement of the law as announced in the case of
 
 Acton
 
 v.
 
 Blundell,
 
 12 Mees. Wels., 324. This is a leading case upon the subject. Citing that case and numerous others in support of the text, Gould on Waters (3d Ed.), Section 280
 
 et seq.,
 
 concisely states the rule as follows: “Water
 
 *129
 
 percolating through the ground beneath the surface, either without a defined channel, or in courses which are unknown and unascertainable, belongs to the realty in which it is found. * * * If underground currents of water flow in defined and known channels, the rules of law which govern the use of similar streams flowing upon the surface of the earth are applicable to them; but if it does not appear that the waters which come to the surface are supplied by a definite flowing stream, they are presumed to be formed by the ordinary percolations of water in the soil.”
 

 That author analyzes and discusses many cases announcing the principle which has become the settled law upon the subject. No case has been cited, and we have discovered none, wherein the rule of riparian rights would apply except to waters flowing in a defined and known channel, whether the same was on the surface or beneath the surface. The case of
 
 Black
 
 v.
 
 Ballymena Township Commrs.,
 
 L. R., 17 Ir., 459, cited by counsel for plaintiff below, is an authority against their contention in this case. A stream of water which was the subject of controversy in that case flowed in a known and defined channel, though in some places the channel was partially and temporarily blocked, and in a portion of its course it was beneath the surface and at other places it rose to the surface of the ground, and further down it flowed in a defined and open channel to the river. It therefore had a well-defined channel which was readily ascertainable.
 

 Subterranean water is presumed to be percolating, and therefore one who claims rights in a flowing stream has the burden of showing its existence. In
 
 *130
 
 this case there is no evidence whatever of any known or defined channel of subterranean water.
 

 It is stated in 1 Tiffany on Real Property (2d Ed.), Section 342, that: “Water is known to be flowing in a well-defined water course, it seems, only when the existence and course of the channel can be ascertained by the reasonable inference of an ordinary man without the necessity of making excavations.”
 

 A clear statement of the rule applicable in this case is made in Washburn’s Easements and Servitudes, 505, as follows: “It may be stated as a general principle of nearly universal application, that, while one proprietor of land may not stop or divert the waters of a stream flowing in a surface channel through it, so as to deprive a landowner whose estate lies upon the stream below that of the proprietor first mentioned of the use of the same, or essentially impair or diminish the use thereof; if, without an intention to injure an adjacent owner, and while making use of his own land to any suitable and lawful purpose, he cuts off, diverts or destroys the use of an underground spring or current of water which has no known or defined course, but has been accustomed to penetrate and flow into the land of his neighbor,' he is not thereby liable to any action for the diversion or stoppage of such water.”
 

 The cases which bear upon this question are almost without number. Many have been cited and analyzed in connection with the report of the case of
 
 Wheelock
 
 v.
 
 Jacobs,
 
 70 Vt., 162, 40 A., 41, 43 L. R. A., 105, 67 Am. St. Rep., 659. Prom the cases there collated the distinction is drawn between a reasonably ascertainable underground water course
 
 *131
 
 and percolating waters, which in onr opinion is decisive of the instant ease. Numerous decisions there cited support the conclusion announced. In order that a subsurface stream may be treated as a water course, its course must be discoverable from the surface of the ground. It is quite generally held that an underground stream, the direction and course of which can only be discovered by excavation, is not a known stream governed by the rules applicable to surface water courses. The rule has been quite generally adopted and followed, as stated in the
 
 Black case, supra,
 
 that the requirement as to a known and defined channel places the burden upon the plaintiff, and that it devolves upon him to show that, “without opening the ground by excavation, or having recourse to abstruse speculations of scientific persons, men of ordinary powers and attainments would know, or could with reasonable diligence ascertain, that the stream, when it emerges into light, comes from and has followed through a defined subterranean channel. The instance given in some of the cases of a stream sinking under ground when it reaches a certain place, and pursuing for a short space a subterraneous course, and then emerging, shows plainly the kind of knowledge required. ’ ’ In one of the cases there cited it is held that the fact that, upon certain excavations being made upon defendant’s land and a flow of water obtained, the water ceased to rise in a spring on plaintiff’s adjoining land, does not prove that such spring is fed by a known and defined subsurface stream, the waters of which were diverted by such excavations.
 

 Many of the older cases there reviewed are analyzed by Brinkerhoff, J., in
 
 Frazier
 
 v.
 
 Brown,
 
 12
 
 *132
 
 Ohio St., 294, and the deductions made from those eases are quite pertinent here, particularly his observation relative to the reason for the rule that there is no liability for the diversion of water except from a known and well-defined stream of water, where he states, at pages 302 and 303 of 12 Ohio State: “The law can not properly limit the ordinarily absolute dominion of the owner of the soil, in respect to things concealed and hidden in the bowels of the earth, nor recognize an adjoining proprietor as having claims upon, or rights in, a thing passing under the surface of his neighbor’s land, the existence of which was first revealed by the very act which would constitute the subject matter of his complaint. * * * Distinct and well-defined subterranean streams of water are comparatively rare; their existence, in any case, can not properly be presumed.” In that ease the court by sustaining a demurrer to the petition denied the right of recovery of damages against an upper proprietor for cutting off or draining underground water percolating through his land to the land of an adjoining proprietor.
 

 That no rights exist to receive percolating waters through the land of another to the extent that the latter is precluded from making any lawful and legitimate use of his own land by digging or otherwise, even though the effect is to drain a spring on the land of an adjoining proprietor, and that injury to such spring by draining it or cutting off the water supply to it by percolation is not actionable was also decided by this court in
 
 Elser
 
 v.
 
 City of Springfield,
 
 49 Ohio St., 84, 30 N. E., 274; and, again, in
 
 Ohio Collieries Co.
 
 v.
 
 Cocke,
 
 107 Ohio St., 238, 140
 
 *133
 
 N. E., 356, this court denied the right of recovery for the loss of a well or spring where it was not shown that there was improper diversion of or interference with a subterranean stream or water in a known and fixed course with a well-defined channel. The case of
 
 Castalia Sporting Club
 
 v.
 
 Castalia Trout Club,
 
 8 C. D., 693, 8 C. C., 194, affirmed by this court without report, 56 Ohio St., 749, 49 N. E., 1108, has no application, for the reason that the fact of the existence of an underground stream had been shown, and the defendant deliberately set out to intercept the same, and by constructing a canal sought to appropriate the water therefrom for a fishpond. An injunction was properly granted.
 

 There is no charge and no evidence that the defendant company was not acting within authority conferred upon it by the owner of the land upon which its operations were being conducted. It will therefore be presumed that it was operating under a valid lease, and its liability therein was no greater than and no different from that of the owner himself acting in like manner for the same purpose.
 

 The court upon request of counsel for the defendant instructed the jury in accordance with the authorities heretofore cited. But upon this record the application of the law established by uniform decision required the direction of a verdict for the defendant, and the defendant’s motion therefor should have been sustained.
 

 Judgment reversed.
 

 Marshall, C. J., Kinkade, Robinson, Jones and Allen, JJ., concur.