THE STATE, EX REL. THE ANDERSONS, A LIMITED PARTNERSHIP, APPELLANT, *v.* MASHETER, DIRECTOR OF HIGHWAYS, APPELLEE.

[Cite as State, ex rel. Andersons, v. Masheter, Dir., 1 Ohio St. 2d 11.]

(No. 38599—Decided December 29, 1964.)

12

 

Messrs. Marshall, Melhorn, Block & Belt, Mr. John B. Spitzer, Messrs. Knepper, White, Richards & Miller and Mr. Hugh A. Sherer, for appellant.

Mr. William B. Saxbe, attorney general, Mr. Harold B. Talbott and Mr. Harry R. Paulino, for appellee.

MATTHIAS, J. The question involved in this case is whether the properly authorized construction of a bridge which prevents grain ships from traveling the Maumee River to and from relator's marine terminal is a taking within the meaning of Section 19, Article I of the Ohio Constitution.

Any person affected has the right to notice and public hearing on any proposed highway change (Section 5511.01, Revised Code) or any proposed obstruction to navigation (Section 513, Title 33, U. S. Code). Relator received notice and participated in the hearing. However, it alleges that it was induced to withdraw its opposition to a low-level bridge by the promise of the city manager that the city of Toledo would compensate it for any damages caused it by the construction of the bridge and would assist it in relocating downstream, and that the Chief of the Corps of Engineers and the Secretary of the Army approved the bridge permit on the premise that the city of Toledo was making provision for moving relator's operations. Assuming that this is true, it has no bearing on the issue of whether the state is constitutionally required to compensate relator for its loss. Therefore, such allegations have no place in this mandamus action.

It is conceded that there was no actual appropriation of relator's land or structures, and that there was no trespass upon its property. The bridge in question is several thousand feet downstream from the land of relator. Relator's claim to compensation is based upon the destruction of relator's right to use the river in connection with its business, since grain ships going to and from its marine terminal are unable to pass beneath the bridge.

Riparian rights are private property within the meaning

of the Constitution. Where the state makes an improvement for a purpose other than the improvement of navigation, which destroys riparian rights, the owners of such rights are entitled to compensation for the loss they have suffered. Paragraph six of the syllabus of *State, ex rel. Squire, Supt.,* v. *City of Cleveland,* 150 Ohio St., 303; 2 Nichols, Eminent Domain, 258, Section 5.792.

Every riparian owner has the right of ingress and egress between his land and the water. In addition, as a member of the public, he has the right to travel on navigable streams. It is important to distinguish these rights. The right to go from his land to the river and from the river to his land is a private property right of the riparian owner. Navigation on public waters is exclusively a public right. Everyone has an equal right to the use of the water for travel and transportation.

Although relator may have more occasions to make use of the right to unimpeded navigation and its land may be more damaged by the loss of that right, the right itself is still public and not private. Its ownership of land on the river gives it no greater right to navigate it. Every other citizen has the same right. 1 Farnham, Water and Water Rights, 131, Section 27; *Whitmore* v. *Brown,* 102 Me., 47, 58, 59, 65 A., 516.

Relator relies primarily on *Hickok* v. *Hine,* 23 Ohio St,. 523, and *Coleman* v. *Schaeffer,* 163 Ohio St., 202.

In *Hickok,* this court held that a riparian owner, with a landing and warehouse, was entitled to enjoin an unauthorized obstruction to navigation. The fact that defendant was a public body did not raise any question of eminent domain. Since the obstruction had not been authorized by the Legislature, the issue was whether plaintiff had standing to enjoin a public nuisance. See paragraph three of the syllabus of that case.

In the *Coleman case,* an injunction was issued requiring the removal of cables and a wire fence which had been placed across a stream by a private individual. No public agency was involved in the case.

Neither of the above cases is authority for holding that a like obstruction authorized by the state is a taking of property rights in violation of the Constitution. Other jurisdictions by statute (Nichols, *supra.,* 456, Section 6.38 [3]) or by their constitutions (See Nichols, *supra.,* 376, 486, Sections 6.1 [3], n. 29

and 6.44) provide for compensation whenever land is taken *or damaged* by public use. In those jurisdictions, the criterion for awarding compensation may be whether the damages would have been actionable at common law or whether the landowner suffered a greater injury than the public generally.

In Ohio, the right to compensation for an authorized governmental taking is more limited. Something more than damage to his property is necessary to entitle the owner to compensation. There must be a "taking" of "private property." Section 19, Article I, Ohio Constitution. If there has been no taking of a person's private property, it is not enough to require compensation that the devotion of other land to a public use damages his property in a manner that would be actionable at common law if it were done by a private individual. *McKee* v. *City of Akron*, 176 Ohio St., 282; Nichols, *supra*, 442, Section 6.38. Thus, cases granting an injunction against an obstruction of navigation which constitutes a nuisance are not authority for requiring compensation by the government for a similar obstruction authorized by the state. Nichols, *supra*, 233, Section 5.7911.

In this case, relator's right to go from its land to the water has not been impaired. Its claim of damage is that grain ships cannot travel past the bridge. In other words, it has lost its right to navigate the public waters. There has been no appropriation of any private right of relator. Thus, there is no taking of private property within the meaning of Section 19, Article I of the Constitution.

Where the construction of a bridge across a navigable stream is properly authorized, riparian owners who have access to the navigable part of the stream but who are cut off from navigation to and from the outside world have no constitutional right to compensation. 2 Nichols, Eminent Domain, 264, Section 5.792 [1], and cases cited, n. 16; *Carmazi* v. *Board of County Commissioner of Dade County* (Fla.), 108 So. (2d), 318; *Marine Air Ways, Inc.,* v. *State*, 201 Misc., 349, 104 N. Y. Supp. (2d), 964.

This court having determined that no private property has been appropriated by the state, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, O'NEILL, GRIFFITH and GIBSON, JJ., concur.

HERBERT, J., dissenting. I am unable to agree with the majority opinion's analysis and conclusion in this cause. As the majority opinion states, the issue presented to this court is whether there has been "a taking within the meaning of Section 19, Article I of the Ohio Constitution." That section provides as follows:

"Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads * * * a compensation shall be made to the owner, in money: and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money * * *."

The inquiry in each case is whether there has been a "taking" of "private property." The majority opinion does not doubt the fact that there has been a "taking" in this case; its concern is directed to the question of whether the appellant's loss was of "private property." With this approach I have no quarrel *provided that it is done in light of Ohio law.* This the majority opinion fails to do. As authority for its conclusion that there has been no taking of "private property," the majority opinion relies entirely on decisions of sister states. It is forced to adopt this position because research fails to indicate any previous decisions by Ohio courts where *compensation* was either granted or denied to a property owner located on an admittedly navigable stream, where an obstruction, not being in the aid of navigation, prevents navigation to and from the property owner's established place of business. In cases of first impression, as is this case, there is a duty upon this court to consider, first, its previous decisions and, second, whether its determination that there has or has not been a taking of "private property" is consistent with its previous decisions. Any other method of analysis would be patently unreasonable and arbitrary, as preferred interests groups would result. The right to compensation should not be determined by the decisions of sister states, first, where a constitutional

provision of the state of Ohio is involved, second, where there is no indication that the same, similar or even any constitutional provision was considered in the sister-state decision, and, third, where legal precedent and policy considerations of the sister state may be totally different. In this respect, consider the fact that many states follow the doctrine of "prior appropriation" as opposed to the doctrine of "riparian rights" concerning water rights. See Callahan, Principles of Water Rights Law in Ohio (1959), 2, 3.

It is believed that previous decisions of this court indicate that appellant has lost a "property right," and that the majority opinion's conclusion is inconsistent with previous determinations of this court that for the loss of the sole means of ingress and egress one is entitled to compensation by virtue of Section 19, Article I of the Ohio Constitution.

The fact situation most analogous to the present is found in *Hickok* v. *Hine* (1872), 23 Ohio St., 523. Therein plaintiff, a private citizen, sought to enjoin the construction of a bridge over a navigable river by the county commissioners. Plaintiff's land was located upstream from the site of the proposed bridge and approximately two and a half miles from the mouth of the river which emptied into Lake Erie. Plaintiff made use of the navigation of the river in connection with his established business. Concerning this "use," the court stated, at pages 528, 529:

"The obstruction of the navigation of the river at the point contemplated would work a special damage to the plaintiff below. For it appears that he is the owner of lands on the navigable part of the river above the proposed bridge, and that there were upon his premises a landing and a warehouse, which were more or less profitably used in connection with the navigation of the river when it was not obstructed. *This was a use of the river at that place, to which he was entitled above that enjoyed by the public*; for the public right was that of an easement merely in the waters of the river for the purposes of navigation.

"The value of this private use * * * nevertheless, whatever such value may be, *the right remains as the private property of the owner of the land,* and the destruction of navigation to that point would render this right valueless * * *."

The *Hickok* decision clearly sets forth the following principles: (1) Property owners on navigable rivers *may* develop a "private use" of the river; (2) use of land for a legitimate business purpose in connection with the navigation of the river establishes a "private use"; (3) a "private use" of the river is a property right which belongs to the landowner; (4) this property right is distinct from and superior to the public right of an easement in the waters of the river for purposes of navigation; and (5) this property right possesses value which depends upon the extent of commerce carried on.

The majority opinion dismisses the *Hickok* decision on the ground that the issue there was merely whether the plaintiff had *standing* to enjoin a public nuisance. In *Hickok*, this court was concerned with two issues: Whether the river was in fact navigable, and, if navigable, whether injunction was the proper remedy. *Hickok* v. *Hine, supra*, at 527. I find no discussion of "standing." Damage or loss seemed presumed; the issue was whether the property owner had pursued the correct remedy.

In *Hickok*, the plaintiff resorted to a court of equity and its *injunctive* powers, as navigation was threatened and not destroyed. It is axiomatic that plaintiff had the burden of proving (a) irreparable damage to (b) some legal right and (c) an inadequate remedy at law. Obviously, the court by granting relief felt that plaintiff had a property right which would be irreparably damaged by constructing the bridge, and that an action at law for damages was an inadequate remedy.

An action at law for damages was also considered to be inadequate in *State, ex rel. Humphrey,* v. *Lake Shore & Michigan Southern Ry. Co.* (1901), 24 C. C. (N. S.), 432. Therein the court ordered the defendants to provide a suitable drawbridge so as not to impede navigation.

More recently, in *Coleman* v. *Schaeffer* (1955), 163 Ohio St., 202, this court ordered the defendants, private citizens, to remove an obstruction to navigation, which was injurious to the plaintiff's established business. Therein this court noted, at page 203:

"The defendants have constructed the fence and steel cables across the stream * * * thus rendering it impossible for the plaintiffs to use the lower part of the stream and *destroying*

*their necessary* ingress and egress from and to the concededly navigable lake.''

The majority opinion cites 2 Nichols, Eminent Domain, 258, Section 5.792, for the proposition that appellant is to be denied compensation. That section, at page 264, provides:

''* * * in the states in which the public rights are paramount, it seems to be generally conceded that if the legislature authorizes the construction of a * * * bridge with or without a draw, across a stream, upper riparian proprietors who are cut off from navigation to and from the outside world have no redress. *A contrary decision has been reached in a state in which compensation is required by the Constitution when property is damaged. It must be remembered * * * that damage may be inflicted within the meaning of such a constitutional provision by the mere exercise of unquestioned public rights.*''

It is this writer's opinion that Ohio, by virtue of its constitutional provision and this court's construction thereof, has definitely adopted the view that compensation is required where ingress and egress on navigable waters is taken.

The majority opinion completely ignores an analogous class of cases wherein Section 19, Article I, has been construed. This court found that ''private property'' would be ''taken'' within the meaning of Section 19, where township trustees sought to obstruct a road which was the property owner's only reasonable means of access to his land. *McQuigg* v. *Cullins* (1897), 56 Ohio St., 649. Therein, at page 654, the court found that the plaintiff had a property right, ''the taking of which there is no right in the public, except upon awarding compensation.''

This court has also recognized that the property need not abut that portion of the highway whereon the obstruction lies to qualify for compensation. See *Kinnear Mfg. Co.* v. *Beatty* (1901), 65 Ohio St., 264, 283. The rule laid down in *Kinnear*, at page 283, is stated:

''To give the individual a right * * * either in a suit for damages or by injunction, he must aver and show, that the injury he suffers is different in kind from that of the general public. This he may do by showing that his easement in the street, as a means of access to his property, is impaired or destroyed. * * * Where his property is not in physical contact with the vacated portion of the street, and he has [no]

other reasonable means of access, *the individual has* \* \* \* [*a*] *right of action by which he can enjoin the obstruction, or recover damages.*"

It is apparent that the theory of the *Hickok* and *Kinnear* decisions are the same: Damages are recoverable where the only reasonable means of ingress and egress is destroyed and the property owner's injury is different in kind from that of the general public. *Hickok* is not distinguished from *Kinnear* by virtue of different subject matter (rivers versus roads) or different prayers (injunction versus damages). "\* \* \* it may be regarded as settled in this state that all navigable rivers are public highways." See *Hickok* v. *Hine, supra,* at 527; accord, *Hogg* v. *Zanesville Canal & Mfg. Co.* (1832), 5 Ohio St., 410, 416. The majority opinion concludes that:

"Something more than damage to his property is necessary to entitle the owner to compensation. There must be a 'taking' of 'private property.' "

No authorities are cited in support of this statement nor is there any explanation as to why compensation is given for the loss of ingress and egress in highway cases. Assuming, however, that this is a true statement of Ohio law, paragraph four of the syllabus in *Hickok* v. *Hine, supra* at 523, establishes that appellant has lost a property right:

"The landings and warehouses of individuals on the bank of a navigable river used in connection therewith, is such *private property* as may be irreparably injured by the destruction of the navigability of the river to such landings and warehouses."

The *Hickok* decision clearly describes those property owners who have a property right: Only property owners with prior established uses of the land who use the land in connection with the navigability of the river. This is the reason that the doctrine of "riparian rights" is not applicable to this case. The property right described in *Hickok* exists by virtue of *use* of the land in connection with the river, *prior* to the creation of the obstruction and not mere ownership of land on the river.

The recent decision of *McKee* v. *Akron,* 176 Ohio St., 282, cited by the majority, has little relevancy to the instant case. Therein it was decided that there was not a "taking" of "private property" within the meaning of Section 19, where odors

20

from a municipally owned sewage plant permeated the air space above a private citizen's property. In view of the fact that the United States Supreme Court has declared that there is a "taking" of "private property," where vibrations and noise from airplanes flying overhead permeate the airspace so as to result in a substantial interference with the use of the land (*United States* v. *Causby,* 328 U. S., 256; *Griggs* v. *Allegheny County,* 369 U. S., 84), cases involving permeating odors must be narrowly construed. As stated in *McKee* v. *Akron, supra,* at 285, "physical displacement is not always necessary." See *Richards* v. *Washington Terminal Co.,* 233 U. S., 546. If grain ships were denied ingress and egress to and from appellant's property because an airport glide path crossed the river downstream from the appellant's land, I would grant compensation; just as the majority opinion would grant compensation if the location of an airplane glide path obstructed a public highway which was the only reasonable means of ingress and egress to and from a private citizen's property. The majority opinion strains upon differences without distinction.

In view of this court's interpretations of Section 19 of Article I of the Ohio Constitution, as discussed above, there should be very strong policy reasons cited by the majority opinion for denying appellant compensation. On the other hand, I believe that policy reasons are just the opposite. The majority opinion fails to recognize the importance of and impelling reasons for the development of navigable rivers in the industrial and agricultural growth of Ohio, particularly in the light of the vital role Ohio's numerous rivers have occupied in its history. The majority opinion sounds the death knell for substantial use of land in connection with the navigability of Ohio's rivers.

I find further that the basis for this dissent is only strengthened when the law is viewed outside Ohio. Two doctrines developed from early common law concerning compensation for the loss of ingress and egress to and from property. 2 Nichols, Eminent Domain, Section 6.4443. The so called Massachusetts doctrine is:

"While the right of access to a *highway or watercourse* is a private right, the right of passage along such *ways* or *watercourses* or avenues of travel is a public right, no matter how near

to or far from ones' premises the ways or watercourses may be, and that the infringement of a public right is not a special and peculiar damage." *Ibid.*, at 581.

Without considering the wisdom of this doctrine, it does demonstrate simplicity in operation and logicalness; neither highway nor watercourse landowners are entitled to compensation. In direct opposite is the so called English doctrine which is:

"When property is so situated with reference to the obstruction that its owner suffers a greater injury than the public generally, such injury is * * * special and peculiar." *Ibid.*, at 580.

It is readily apparent that this court, in *Hickok*, involving navigable rivers, and in *Kinnear*, involving roads, adopted the English view concerning compensation. In both *Hickok* and *Kinnear*, this court stressed the fact that the property owner suffered an injury above that suffered by the public. The English doctrine also advances simplicity and logic; both types of property owners recover.

Concluding, I think that Section 19, Article I, its previous interpretations manifested in this court's decisions in both navigation and highway cases and policy reasons demand that appellant be given compensation for the loss of its "property." Appellant relied upon these considerations and, in addition, a promise of compensation for the loss of a valuable property right, and now it receives nothing.