154

THE STATE, EX REL. ROYAL ET AL., APPELLEES, *v.* CITY OF COLUMBUS ET AL., APPELLANTS.

[Cite as State, ex rel. Royal, v. City of Columbus, 3 Ohio St. 2d 154.]

(No. 39069—Decided July 21, 1965.)

*Mr. Joseph S. Deutschle, Jr., Mr. James C. Britt* and *Mr. Willis E. Wolfe, Jr.,* for appellees.

*Mr. John C. Young,* city attorney, *Mr. Alba L. Whiteside* and *Mr. Thomas A. Bustin,* for appellants.

HERBERT, J. Appellants have presented in their brief filed in this court some 15 questions of law, supplemented by some 12 subordinate questions of law for this court's determination. This is in contrast to the following three errors, filed in the Court of Appeals, that appellants claim appear in the record in the Court of Common Pleas of Franklin County.

"1. The trial court erred in admitting certain evidence over the objection of respondents.

"2. The trial court erred in overruling respondents' motion for dismissal made at the close of relators' case.

"3. The trial court erred in granting the writ of mandamus, when the evidence demonstrated that relators had not established a clear right to such writ."

Nearly all the questions presented by appellants are, in effect, questions appearing for the first time in this cause in this court. It is well established that this court need not consider or determine claimed errors which were not raised or preserved in the Court of Appeals. See *State, ex rel. Babcock,* v. *Perkins,* 165 Ohio St. 185; 4 Ohio Jurisprudence 2d 534, Appellate Review, Section 1178.

We note also that many of the belatedly raised questions concern alleged errors occurring in the trial court in which appellants either participated in or acquiesced. The record shows that the appellants consented to a joinder of some thirty additional parties "because of the cost involved if they had to file an individual case * * *." Appellants agreed also with a ruling of the trial court, after some eight relators had testified as to appellants' interference with the enjoyment of their

property, that the testimony of the remaining appellees would be cumulative. Appellants did not utilize the opportunity afforded to them by the trial court to cross-examine this cumulative evidence. Now appellants seek to question, for the first time, the quantum of evidence presented to trial court concerning each individual piece of property.

"It is well settled that an appellant * * * cannot attack a judgment for errors committed by himself, or for errors which he induced the court to commit or into which he either intentionally or unintentionally misled the court, and for which he is actively responsible." 3 Ohio Jurisprudence 2d 641 to 646, Appellate Review, Invited Error, Sections 693 to 696. See, also, 4 Ohio Jurisprudence 2d 40, Appellate Review, Section 836, Misjoinder.

We therefore consider only those errors presented to the Court of Appeals.

Considering the first assignment of error, appellants object to the testimony of one Curtis French offered on behalf of appellees. The Court of Appeals, in passing on this error, stated as follows:

"* * * French testified on a variety of subjects and was given an exhaustive cross-examination, recross-examination and re-recross-examination. Any error originally claimed was waived, and there being no jury present, it may be assumed the trial court was able to distinguish proper evidence from that which was not. This error is not well taken."

We do not find the Court of Appeals ruling on the first assignment of error to be erroneous.

The Court of Appeals, in considering the second and third assignments of error, interpreted them "to raise the question that the decision and judgment were contrary to the weight of the evidence. *However, counsel for respondents-appellants limit their claim to the question as to whether relators-appellees had maintained the burden of proof which rested on them in this case.*"

It is well recognized that a person seeking a writ of mandamus must establish a clear right to the relief sought. 35 Ohio Jurisprudence 2d 461 and 463, Mandamus, Sections 170 and

171. In the instant case, the relief sought was an order directing appellants to institute appropriation proceedings for the purpose of compensating appellees for certain property rights allegedly taken by appellants. Thus, the issue before the trial court in this cause was whether there had been a "taking" of private property contrary to Section 19, Article I of the Ohio Constitution.

Did appellees show a clear right to the relief sought? The United States Supreme Court had considered on two occasions whether there had been a "taking" of property by virtue of airplane flights over private property under the Fifth Amendment (*United States* v. *Causby*, 328 U. S. 256, 90 L. Ed. 1206) or the Fourteenth Amendment (*Griggs* v. *Allegheny County*, 369 U. S. 84, 7 L. Ed. 2d 585) of the United States Constitution.

In *Causby, supra*, the Supreme Court enunciated the following test:

"* * * Flights over private land are not a taking unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land." *United States* v. *Causby, supra* (328 U. S. 256, 266, 90 L. Ed. 1206, 1216). Applying the above test the Supreme Court found there had been a "taking" in a constitutional sense of an air easement, for which compensation must be made, by low flights of United States airplanes over a chicken farm which rendered the property unusable for that purpose.

In *Griggs, supra*, the Supreme Court considered the plight of homeowners who were subjected to similar low level flights as in *Causby, supra*, but who were not conducting a business on their land. In its opinion the court noted that flight patterns ranged "from 30 feet to 300 feet over petitioner's residence; and on let-down they were within 53 feet to 153 feet," that its occupants were frequently unable to sleep, that the windows of the home would rattle and plaster would sometimes fall when the flights occurred, and that the health of the occupants was affected and impaired. The court states, "the use of the land presupposes the use of some of the airspace above it. * * * Otherwise no home could be built, no tree planted, no fence constructed, no chimney erected."

The principles found in *Causby* and *Griggs* are applicable to the instant case. There exists a "taking" in a constitutional sense under Section 19, Article I of the Ohio Constitution, whenever airflights "are so low and so frequent as to be a direct and immediate interference with enjoyment and use of the land." And we think that a person's residence is a use for which he is entitled to compensation whenever he can prove a direct and immediate interference with that use.

The trial court in this cause, in its opinion found that "from the evidence adduced there can be no doubt but [*sic*] that relators' property rights have been interfered with, their property has depreciated in value by reason thereof, and that there has been an appropriation by defendants by reason of the use of the air above the relators' homes and they are entitled to be compensated for such use." The trial court relied on evidence that the air flights disturbed sleep, loosened plaster on walls, and jarred dishes and other objects from shelves.

The Court of Appeals noted in its opinion that the evidence showed damage to a window, fireplace, and window frame and that "the 'glide angle height above house' as to each of said properties * * * ranged from a minimum of fifty feet to sixty feet to a maximum of ninety feet."

In view of the facts that the appellants agreed to try at one trial the issues of a "taking" as to 28 different parties, and that the appellees' evidence, if presented, would be cumulative, we do not feel constrained to disturb the Court of Appeals' judgment on the second and third assignments of error as to the evidence.

It is not without most serious deliberation that we do not consider certain questions raised by appellants in this court. But a public body, no less than an individual, must adhere to the procedures governing judicial inquiries. And it may not agree, intentionally or unintentionally, that suitors join collectively to present but a part of their evidence and attack the quantum of evidence on appeal. (Nor may it conduct its first real fight of the issues in this court. Compare *Williamson* v. *Rubich*, 171 Ohio St. 253.)

The ultimate liability of appellants, if any, will be deter-

mined in subsequent proceedings.* We think substantial justice has been accorded to all the parties.

For the above mentioned reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

ZIMMERMAN, O'NEILL and BROWN, JJ., concur.

TAFT, C. J., MATTHIAS and SCHNEIDER, JJ., dissent.

SCHNEIDER, J., dissenting. The majority opinion is persuasive of at least one conclusion: that if the court today had launched a vessel of unknown dimensions for an indefinite voyage on an uncharted sea to an undisclosed destination it could not have been the author of more uncertainty.

In effect, the plaintiffs, and countless numbers similarly or even remotely situated, will receive from a subdivision of the sovereign, acting in a sovereign capacity, varying amounts of money damages for injury to their sensibilities.

By bitter contrast, a patient injured bodily in the sovereign subdivision's hospital by the culpability of one of its servants, remains without remedy against the sovereign subdivision. *Hyde* v. *City of Lakewood*, 2 Ohio St. 2d 155.

---

*HERBERT, J. It follows therefrom, that the majority opinion neither grants nor denies any compensation to anyone for claims of the "taking" of private property for public use. See Section 19, Article I of the Constitution of the state of Ohio. Thus, it is obvious that the fears expressed in the dissent may be calmed until a Court of Common Pleas and a jury pass upon any question of property rights that may be raised in respect to low-flying airplanes as clearly held by the Supreme Court of the United States.