HUELSMANN ET AL., APPELLANTS, *v.* THE STATE OF OHIO ET AL., APPELLEES.

(No. 77AP-619—Decided December 29, 1977.)

*Messrs. Beirne & Wirthlin,* and *Mr. Michael A. Fulton,* for appellants.

*Mr. William J. Brown,* attorney general, and *Mr. Melvin D. Weinstein,* for appellees.

HOLMES, J.   This matter involves an appeal of a summary judgment for defendant Department of Transportation in an action brought by the plaintiff property owners in the Court of Claims, seeking damages against the state for the plaintiffs' complete loss of water in their well which plaintiffs alleged was occasioned by highway construction by the state.

The basic facts giving rise to this action, and the history of the case, are briefly as follows: The plaintiffs, Mr. and Mrs. Robert Huelsmann, brought this action in the

Court of Claims against the state of Ohio, claiming that the state in constructing a highway on property adjacent to plaintiffs' property had occasioned the drying up of plaintiffs' well which supplied their family water needs.

The state filed a motion for summary judgment, such motion being based upon the claimed legal principle that the loss of subsurface or ground water, which supplied plaintiffs' well, was *damnum absque injuria*, in that such ground waters in Hamilton County are generally percolating in nature, for which no action at law can lie.

Accompanying the motion for summary judgment was the affidavit of Mr. Harry Marshall, engineer of pavement and soils for the Department of Transportation, who stated that it was his opinion that the only subsurface waters to be found in western Hamilton County, Ohio, were percolating in nature. The trial court, finding that there were no issues of any material facts, and finding that the plaintiffs' complaint stated no claim against the defendant, entered a summary judgment for the Director of Transportation.

The plaintiffs appeal, setting forth the following assignments of error:

"The Court of Claims erred to the prejudice of the plaintiffs-appellants as a matter of law in granting the motion for summary judgment of the defendant-appellee prior to a full trial on the merits.

"1. Where a Property Owner Relies Upon Subterranean Percolating Waters for Household Use and Where the State's Construction of a Highway Upon Adjoining Property has impaired or Destroyed the Property Owner's Use of Such Waters, the State Must Answer to the Property Owner in Damages in the Court of Claims.

"2. Where Highway Construction Has Resulted in the Partial Reduction or Total Destruction in the Supply of Water to a Water Well Located on Adjoining Property, and has at the Same Time Caused a Reduction in the Value of the Property Served by the Water Well, the Property Owner is Entitled to Direct and Consequential Damages to the Extent of the Diminution in Value from the State.

"3. Where the State, in the Process of Constructing a Highway, Could Have Anticipated a Reduction in or the Total Destruction of a Property Owner's Water Well as a Result of said Construction, the State has a Duty to Provide Prior Notice to the Land Owners of the Impending Damages.

"4. Where There are Material Questions of Fact Which Have Not been Resolved by the Affidavit Filed in Support of a Motion for Summary Judgment, the Cause Cannot be Decided in Favor of the Moving Party by the Court in Advance of Trial."

I.

The first three assignments of error basically present the proposition that the courts of Ohio should reexamine and carve out new plateaus of Ohio law relative to subterranean percolating waters. The appellants argue that the historical water law, as enunciated in the early Ohio case of *Frazier* v. *Brown* (1861), 12 Ohio St. 294, and the later case of *Logan Gas Co.* v. *Glasgo* (1930), 122 Ohio St. 126, which case law was relied upon by the trial court, is no longer viable for a state, or nation, "with the increasing water pollution problems, water shortages and energy problems which have characterized modern living."

The early common law rule relative to percolating waters, which was adopted into Ohio law by *Frazier* v. *Brown,* is to be found within the first paragraph of the syllabus of such case, as follows:

"In the absence of express contract and positive legislation, as between proprietors of adjoining lands, the law recognizes no correlative rights in respect to underground waters percolating, oozing or filtrating through the earth; hence, where a land owner digs a 'hole' on his own land for purposes connected with the use of his own land, thereby cutting off or diverting underground waters which have always been accustomed to percolate and ooze through his land to the land of an adjoining proprietor, and there to form the source of a spring and rivulet, any damage thereby occasioned to such adjoining proprietor is *damnun absque injuria.*"

The basic reasoning of the court for establishing such water law principles is set forth by Judge Brinkerhoff, at page 311, as follows:

"The reasoning is briefly this: In the absence of express contract, and of positive authorized legislation, as between proprietors of adjoining lands, the law recognizes no correlative rights in respect to underground waters percolating, oozing or filtrating through the earth; and this mainly from considerations of public policy. 1. Because the existence, origin, movement and course of such waters, and the causes which govern and direct their movements, are so secret, occult and concealed, that an attempt to administer any set of legal rules in respect to them would be involved in hopeless uncertainty, and would be, therefore, practically impossible. 2. Because any such recognition of correlative rights, would interfere, to the material detriment of the common wealth, with drainage and agriculture, mining, the construction of highways and railroads, with sanitary regulations, building and the general progress of improvement in works of embellishment and utility."

This water law of Ohio, which is one basically of "finders keepers," has been the general principle as applied in a greater number of the midwestern and eastern states throughout the years, rather than other principles of water law such as the rule of correlative rights of the law of reasonable user, or water allocation laws to be found in the more westerly and arid states. The law as adopted by Ohio and many other eastern states permits the landowner who obtains his water from an underground source to pump without limit, but his supply will not be protected against other uses or interferences. This rule is the English common law rule referred to as the rule of "absolute ownership." If, however, it can be shown that the ground water is traveling in an "underground stream," the rules of surface water, or riparian rights, might well prevail. However, it is stated in the chapter on Water Rights Law in Ohio, to be found in the Legislative Service Commission report No. 115 on Ground Water, December 1974:

"It is presumed that water in the ground is 'percolating' unless the existence of an underground stream can be found. Because the concept of 'underground streams' has been little recognized by the courts, and even less by geologists, the effective rule is the one applicable to percolating water. The reasons for the rule are given in *Frazier* v. *Brown*, 12 Ohio St. 294 (1861)."

In like manner, in *Logan Gas Co.* v. *Glasgo, supra,* the law of the case, to be found at paragraph three of the syllabus, is that:

"All underground waters are presumed to be percolating, and to take them out of the rule regarding such waters the existence of a defined subterranean stream either known or readily ascertainable must be shown."

The appellants would have this court adopt the rule of "reasonable use" as now being the more modern solution to current water problems and needs "because it limits the right of the landowner to such use of the percolating water under his land as may be necessary, and restricts his right to use it or to waste it, where he is causing injury to adjoining landowners * * *."

There is no doubt about there being a right of action existing by one neighboring owner of property against another for waste of water in well defined streams. However, the appellants argue that "Ohio law should be uniform in recognizing that adjoining property owners have no greater entitlement to commit a waste of their subterranean waters to the detriment of their neighbors, than they have to waste water located in a well defined stream."

There is, however, as significantly noted in the Ohio cases as cited, such as *Logan Gas Co.* v. *Glasgo* and *Frazier* v. *Brown*, a difference between the classifications or types of water, and the law applicable thereto, whether the water is surface water traveling in a well defined stream or channel and, in a similar manner, whether it is subterranean water traveling in a stream or channel, or whether it is considered to be percolating water.

As to the rights of a riparian owner along a water course whose waters were contaminated by the cities' sew-

age, the court, in *City of Mansfield* v. *Balliett* (1902), 65 Ohio St. 451, held, in the first and second paragraphs of the syllabus, as follows:

"1. Riparian rights are property within the purview of section 19 of the bill of rights, of which the owner cannot be deprived without just compensation, though taken for, or subjected to a public use.

"2. Any actual and material interference with such rights, which causes special and substantial injury to the owner, is a taking of his property."

However, as stated, when dealing with subterranean waters, it is only where underground streams of water flow in well defined and well known channels which can be traced that rights of ownership arise to the same extent as exists between riparian owners of surface water.

It is clear that the pronouncements of the Supreme Court of Ohio in this area of water law have, from the era of *Frazier* v. *Brown* to this day, remained unchanged. Perhaps modern day needs of Ohio, as a great and growing industrialized state, may dictate other water policies in the future in order more equally to meet the growing demands of our society and to a more reasonable degree provide greater conservation of this extremely important natural resource. However, if needed, this would be a challenge for the legislative body of our state, and not our judiciary.

Mr. James R. Hanson, then Assistant Executive Secretary of the Ohio Water Commission, and later Project Officer for the Legislative Service Commission Staff report on ground water, stated in a presentation entitled "Ohio's Secret Substance" as follows:

"Judge Brinkerhoff, who wrote the opinion in *Frazier* v. *Brown*, was too wise to step into this pitfall. What if he had not admitted his ignorance of hydrology, and had attempted to state a rule based upon 'well-established hydraulic engineering principles,'? Indeed, what if he sat on the bench today, with what we know now, and attempted to state such rules? What would the rules be? For a judge to decide on the level at which the plaintiff's well should

be protected, would he not have to consider the total flow of the aquifer involved? Would he not have to know the effect of interaction of surface streams with the aquifer?

"The effect of other pumping? And just what is this resource he is presuming to regulate? Insofar as knowledge of the behavior and capabilities of our ground water bearing formations is concerned, we are still in such a state of ignorance that we would be unable to manage them effectively even with the best of administrative controls. We no longer say that the behavior of water is 'secret and occult.' We say that a great deal of exploration and research needs to be done.

"Picture the individual property owner coming into court to prove his right to his water level in a state like Ohio where rainfall is ample, but so is population, and the establishment of any one right cannot be done without affecting many others. Consider the stream gauging, the test-well drilling, the seismic investigation, the computer programming, and the hourly wage of the experts who would be required to prove this single water right, and tell me whether, to the ordinary landowner, the behavior of ground water is still not just as 'secret and occult' as it ever was?"

These thoughts, as expressed by Mr. Hanson, are equally applicable today. We hold that the law in *Frazier* v. *Brown* is also applicable and viable in Ohio yet today. Therefore, as between private property owners, there could have been no recovery under the facts of this case. The state's limited waiver of immunity, pursuant to R. C. 2743.02(A), provides no new claims for relief, but only permits the liability of the state to be determined in accordance with the rules of law applicable to suits between private parties. Therefore, the complaint does not state a cause of action against the state. Accordingly, we must overrule the appellants' first three assignments of error.

As to the appellants' fourth assignment of error, the claim is that upon summary judgment, pursuant to Civ. R. 56, there must be a showing by the movant that there is no genuine issue of material fact, and that the party against

whom the motion is made is entitled to have the evidence construed most strongly in his favor. The appellants correctly state the rule. Now we must look at the matter before the trial court to determine whether summary judgment was in fact warranted.

If the well was supplied by percolating waters, or waters filtering or oozing through the earth in undefined or temporary channels, the appellants may not maintain an action against the state of Ohio for reducing or cutting off those waters, even where the appellants have been injured thereby.

Attached to the motion for summary judgment was the affidavit of Harry E. Marshall, engineer of pavement and soils for the defendant Department of Transportation. Mr. Marshall, who is a licensed professional engineer and a Fellow of the Ohio Academy of Science, with degrees in both geology and education, has the duty of analyzing earthen foundations under highway pavements and embankments for the department.

Mr. Marshall stated that he had examined and studied the applicable geologic literature with respect to Hamilton County and had determined that the bedrock foundation underlying the soil consists of alternating layers of thin-bedded shale and thin-bedded limestone. He further stated that this bedrock formation is so dense that it does not store appreciable amounts of ground water, and water is found there at shallow depths where accumulation occurs along bedding planes and fracture zones, and does not occur in definable channels and streams.

Finally, Mr. Marshall stated that it was his opinion, within a reasonable scientific certainty, that the only waters flowing through the bedrock formation in Hamilton County are percolating waters.

As Mr. Marshall's affidavit clearly established, the waters which supplied the appellants' well were percolating in nature. The appellants have not even suggested in their brief that this statement was inaccurate, except to say that "nothing in his affidavit indicated that he had studied the area where the water well is located or that

he had drawn any conclusions as to why it had suffered a sudden loss of water * * *.''

Therefore, we hold that summary judgment was in order, and properly granted in this case.

## II.

In a "second proposition" of law, the appellees argue that the Court of Claims lacked subject matter jurisdiction over this action in that the appellants, in essence, are seeking damages in an appropriation type proceeding. The director points out that this court previously held, in *J. P. Sand & Gravel Co.* v. *State* (1976), 51 Ohio App. 2d 83, that there was a remedy available to landowners seeking redress against the state for a "taking" of property, and that such a remedy was mandamus and an appropriation proceeding in the Common Pleas Court, pursuant to R. C. Chapters 163 and 5519; and that, therefore, an action in the Court of Claims would not be available pursuant to R. C. 2743.02.

The holding in *J. P. Sand & Gravel* was followed by decisions in the Tenth District Court of Appeals, in *State, ex rel. Edmisten,* v. *Jackson,* unreported, No. 75AP-557, decided July 1, 1976, and *State, ex rel. Nicholson,* v. *Jackson* (1977), 54 Ohio App. 2d 215, in which the court denied writs of mandamus on the basis that in actions seeking damages against the state for "takings" the property owners had an available remedy in the ordinary course of the law in the Court of Claims.

Realizing the confusion that had been presented by these rather inconsistent holdings, this court was presented the opportunity to clarify our prior decisions in *Kermetz* v. *Cook-Johnson Realty Corp.* (1977), 54 Ohio App. 2d 220. Our holding in *Kermetz* is to the effect that a landowner may bring his action claiming damages for a "taking" either in the Court of Claims, where his bringing such an action would be determined to be a waiver of his right to a jury assessment of the damages as required by the Constitution of the state of Ohio and by the statutes, or, in the alternative, the landowner could bring his action for mandamus in a court having jurisdiction for such orig-

inal actions, and seek an appropriation proceeding in which a jury would determine the damages involved in such a "taking."

We, therefore, hold that this action was properly brought in the Court of Claims of Ohio.

Based upon all of the foregoing, the assignments of error of plaintiffs-appellants are hereby dismissed, and the judgment of the Court of Claims is hereby affirmed.

*Judgment affirmed.*

STRAUSBAUGH, P. J., and REILLY, J., concur.