SMITH et al., Appellants,

v.

**SUMMIT COUNTY et al., Appellees.**

[Cite as *Smith v. Summit Cty.* (1998), 131 Ohio App.3d 35.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19011.

Decided Dec. 30, 1998.

36

*Steven A. Beres,* for appellants.

*Maureen O'Connor,* Summit County Prosecuting Attorney, and *Allyson Miller Leonard,* Assistant Prosecuting Attorney, for appellees.

DICKINSON, Judge.

Plaintiffs Gerald and Nellie Smith have appealed from a judgment of the Summit County Common Pleas Court that dismissed their case against defendants Summit County and Gene Esser, the Summit County Engineer. Plaintiffs have argued that the trial court incorrectly held that they could not maintain a mandamus action to require the county to institute eminent domain proceedings for depriving them of ground water flow under their land.[1] This court affirms the judgment of the trial court because interruption of the flow of ground water is not a taking for which appropriation proceedings must be instituted.

## I

Plaintiffs own a house in Franklin Township. During June 1994, the county started construction work on the road running in front of plaintiffs' house. According to plaintiffs, the work continued through the summer of 1995. Also according to plaintiffs, the county's construction work deprived them of ground water flow to a pond on their property. Apparently, the ground water that fed the pond was either diverted or destroyed by the county's work.

On December 23, 1996, plaintiffs filed a complaint in the Summit County Common Pleas Court, alleging "negligence and appropriation." On January 6, 1997, the trial court dismissed that action and instructed plaintiffs to file their claim in the probate court. Plaintiffs filed an action in that court, but the probate court dismissed it for lack of jurisdiction. On April 24, 1997, plaintiffs filed this mandamus action in the Summit County Common Pleas Court. They asked the trial court to compel the county to begin appropriation proceedings for deprivation of ground water flow.

On September 23, 1997, the county moved the trial court for judgment on the pleadings. On February 27, 1998, the trial court granted that motion, ruling that an action for appropriation, pursuant to R.C. Chapter 163, applies only to real property and that ground water is not a part of the land subject to appropriation. Consequently, according to the trial court, plaintiffs had no legal right to appropriation proceedings. Plaintiffs timely appealed to this court.

---

1. The Restatement has adopted the term "ground water" instead of "subterranean waters" or "underground water" to refer to those waters found below the surface of the earth. "The term is the one most frequently used by scientists and expert witnesses and is frequently found in modern cases and statutes." Restatement of the Law 2d, Torts (1979) 199, Section 845. Accordingly, the term ground water will be used by this court to refer to the underground water that is the subject of this dispute.

## II

. Plaintiffs' assignment of error is that the trial court incorrectly found that they could not maintain a mandamus action to require the county to institute eminent domain proceedings for depriving them of ground water flow under their land. They have argued that governmental takings are not limited to estates of title, but may involve any interest in real property. They have pointed to cases in which courts have found a taking to have occurred when, among other things, riparian rights were disrupted or land was flooded. From these cases, plaintiffs have asked this court to reverse the trial court's ruling and to order that their complaint be addressed on the merits.

When a trial court considers a defendant's motion for judgment on the pleadings, the plaintiff, against whom the motion is filed, is entitled to have all the material allegations in the complaint, with all reasonable inferences drawn, construed in his or her favor. *Lin v. Gatehouse Constr. Co.* (1992), 84 Ohio App.3d 96, 99, 616 N.E.2d 519, 521. To uphold a dismissal, this court must conclude that plaintiffs could prove no set of facts in support of their claim that would entitle them to relief. *Id.;* see, also, *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931, 936; *State ex rel. Pirman v. Money* (1994), 69 Ohio St.3d 591, 592–593, 635 N.E.2d 26, 28–29.

Plaintiffs sought a writ of mandamus to compel the county to institute appropriation proceedings to compensate them for the alleged taking of ground water flow under their land. Mandamus is appropriate when a plaintiff proves that he has a clear legal right to the relief requested, the defendant is under a clear legal duty to perform the requested act, and the plaintiff has no plain and adequate remedy at law. *State ex rel. Westchester Estates, Inc. v. Bacon* (1980), 61 Ohio St.2d 42, 15 O.O.3d 53, 399 N.E.2d 81, paragraph one of the syllabus; *Brunson v. Woodland Arboretum Cemetery Assn.* (1996), 109 Ohio App.3d 152, 156, 671 N.E.2d 1120, 1122.

In their brief to this court, plaintiffs have claimed that the county's work caused water and debris to run into the pond in front of their house, making it unfit for fish and wildlife. According to plaintiffs, the county's actions also caused the level of the water in the pond to decrease, apparently due to the alleged diversion of the flow of ground water to the pond. Plaintiffs' complaint, however, did not include a claim that the county had caused debris to enter their pond; instead, it alleged only that the county had deprived them of "the flow of underground waters to the pond located on their property." This court will not, therefore, address those claims raised for the first time in plaintiffs' brief to this court, that is, that the county caused water and debris to run into their pond. Instead, this court will determine only whether the county should have been

required to institute appropriation proceedings, pursuant to R.C. Chapter 163, to compensate plaintiffs for the alleged deprivation of ground water flow under their land.

■■■■ Section 19, Article I of the Ohio Constitution provides that, whenever private property is taken for a public purpose, its owner is entitled to compensation. *J.P. Sand & Gravel Co. v. State* (1976), 51 Ohio App.2d 83, 88, 5 O.O.3d 239, 241–242, 367 N.E.2d 54, 58–59.[2] R.C. Chapter 163 was enacted to implement that constitutional provision. *Id.* To establish a taking, a landowner must demonstrate a substantial or unreasonable interference with a property right. *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 206, 667 N.E.2d 8, 11–12. Such an interference may involve the actual physical taking of real property, or it may involve the deprivation of an intangible interest in the premises. *Id.* Neither party has pointed to any authority from this state that has specifically addressed the issue in this case, namely, whether a governmental entity commits a taking when, in repairing a public road, it interrupts or destroys ground water flow under the land of a private individual. This court has also been unable to locate such authority.

## A

"Ancient law gave no special consideration to ground water, treating all water like the air, the sea, and wild animals, as the property of no one or the property of everyone." *Tequesta v. Jupiter Inlet Corp.* (Fla.1979), 371 So.2d 663, 666, citing Trelease, Government Ownership and Trusteeship of Water (1957), 45 Calif.L.Rev. 638, 640. Early Ohio law essentially followed this principle with its adoption of the English Rule of ground water use. Pursuant to that rule, a landowner who withdrew ground water underlying his land, for purposes connected with the use of his land, faced no liability if that withdrawal depleted the water table and deprived a neighbor of the use of the ground water underlying his land. *Frazier v. Brown* (1861), 12 Ohio St. 294, 1861 WL 32, paragraph one of the syllabus. In 1984, *Frazier* was overruled by the Ohio Supreme Court in *Cline v. Am. Aggregates Corp.* (1984), 15 Ohio St.3d 384, 15 OBR 501, 474 N.E.2d 324. In *Cline*, the Ohio Supreme Court applied the Restatement of the Law of Torts, 2d (1965), Section 858, and adopted a reasonable-use doctrine regarding ground water issues. *Id.* at 387, 15 OBR at 503–504, 474 N.E.2d at 326–327. *Cline* provided a cause of action for unreasonable interference with the use of ground water.

---

**2.** Plaintiffs have not invoked the Fifth Amendment to the United States Constitution, which prohibits the taking of property without just compensation. This court's analysis will, therefore, be limited to a discussion of plaintiffs' rights under the Ohio Constitution.

Important for this case, however, is that in both *Frazier* and *Cline,* the Ohio Supreme Court espoused rules of use, rather than rules of title. *Wood v. Am. Aggregates Corp.* (1990), 67 Ohio App.3d 41, 44, 585 N.E.2d 970, 972. "One does not acquire title to [ground] water but rather a right to use a reasonable amount so long as neighboring landowners are not unduly prejudiced." *Id.* No landowner in Ohio, therefore, has ever held title to ground water. Rather, a landowner has a right to use a reasonable amount of ground water underlying his or her land and, should that use be interrupted by a competing user, may have a claim against that competing user for his or her unreasonable use. The county has argued that, based on *Cline,* plaintiffs have, at most, an action in tort for alleged interference and that, therefore, plaintiffs have an adequate remedy at law, prohibiting granting of mandamus relief in this case. Plaintiffs, however, have argued that *Cline* is not applicable to this case because it involved a situation of competing ground water users and the action causing the alleged injury in this case was the county's construction work on the road, not a competing ground water use. See Restatement of the Law 2d, Torts (1979) 253, Topic 4 ("[Section 858] does not deal with an interference with a possessor's use and enjoyment of ground water by a means other than a use of water"). Nonetheless, a landowner would not have a greater interest in ground water, for purposes of determining when a taking has occurred, when the deprivation of that water was caused by an action like that alleged in this case—interruption due to construction work—as opposed to a deprivation caused by competing ground water uses. In other words, if a landowner does not have a sufficient property interest in ground water to result in a taking when the government acts as a competing user of that water, then no taking will occur when the government acts on neighboring land, unrelated to ground water use, causing a deprivation of that same water. See Restatement of the Law 2d, Torts (1979) 203, Section 849 (even when Section 858 does not provide the cause of action, that section is applicable to determine the legal interest of the parties involved).

The interest in the use of ground water in the Restatement is phrased in terms of nonliability, not title or property interests. See Restatement of the Law 2d, Torts (1979) 259, Section 858. In addition, it has been held that, as between competing users of ground water, landowners have no title interest in the ground water underlying their properties. *Wood, supra,* 67 Ohio App.3d 41, 585 N.E.2d 970; see, also, *Chino Valley v. Prescott* (Ariz.1981), 131 Ariz. 78, 638 P.2d 1324, 1328 ("there can be no ownership in [ground waters] until they are reduced to actual possession and control"); *Cherry v. Steiner* (D.Ariz.1982), 543 F.Supp. 1270, 1277 (under Arizona law, "there is no right of ownership in groundwater prior to its capture. A landowner whose land overlies groundwater has only the right to use of the water, but maintains no proprietary interest in the actual water"); and *Tequesta v. Jupiter Inlet Corp.,* 371 So.2d at 667 ("[t]he ownership

of land does not carry with it any ownership of vested rights to underlying ground water not actually diverted and applied to beneficial use"). Plaintiffs have not, therefore, been deprived of title to their property for which compensation must be paid. Accordingly, the issue before this court is whether the county's actions substantially or unreasonably interfered with a property right, apart from title, that plaintiffs held in the flow of ground water under their land, thereby constituting a taking pursuant to the Ohio Constitution.

## B

Plaintiffs have argued, in reliance upon *Mansfield v. Balliett* (1902), 65 Ohio St. 451, 63 N.E. 86, that their rights in ground water are similar to the rights of riparian owners. Riparian rights entitle landowners to use a watercourse that flows on or adjacent to their property, subject only to the restriction that they do so reasonably and that they submit to reasonable use by others. *Accurate Die Casting Co. v. Cleveland* (1981), 2 Ohio App.3d 386, 389, 2 OBR 459, 462–463, 442 N.E.2d 459, 462–463. The Ohio Supreme Court has recognized that riparian rights are private property within the meaning of the Ohio Constitution and that interference with those rights could constitute a taking for which compensation must be provided. See *State ex rel. Andersons v. Masheter* (1964), 1 Ohio St.2d 11, 12–13, 30 O.O.2d 6, 6–8, 203 N.E.2d 325, 326–327.

Traditionally, ground water has been classified in one of two ways: as percolating water or as water that flows in well known or well defined channels. See *Frazier, supra*, 12 Ohio St. at 298–299; *Logan Gas Co. v. Glasgo* (1930), 122 Ohio St. 126, 130–131, 170 N.E. 874, 876. Before *Cline*, riparian rights generally applied only to that type of underground water that was viewed as flowing in well-known or well-defined channels. See *Logan Gas, supra*, at 129, 170 N.E. at 875–876 (the rules of riparian rights apply only to waters flowing in a defined or known channel, whether above or below the surface); *Huelsmann v. State* (1977), 56 Ohio App.2d 100, 105, 10 O.O.3d 126, 129, 381 N.E.2d 950, 953 (when dealing with subsurface waters, it is only when underground streams of water flow in well defined or well known channels that can be traced that rights of ownership arise to the same extent as exists between riparian owners of surface waters). After *Cline* and its adoption of the Restatement's theory of ground water use, riparian rights no longer exist in ground water. As noted in the Restatement:

"In a few cases the courts have held that a particular body of ground water constitutes an 'underground stream' and have allocated the water to overlying owners as if it were a surface stream. There is little scientific basis for distinguishing an underground stream from any other aquifer * * * and Section 858 gives a modern basis for making an apportionment or allocation of ground

water without resort to unscientific fictions." Restatement of the Law 2d, Torts (1979) 190, Section 841.

Contrary to plaintiffs' suggestions that they possessed riparian rights in the ground water feeding their pond, no such rights existed. The county, therefore, cannot be made to institute appropriation proceedings based on that theory.

## C

Plaintiffs have also relied upon *Lucas v. Carney* (1958), 167 Ohio St. 416, 5 O.O.2d 63, 149 N.E.2d 238, to support their position that their property rights were taken by the county. Mahoning County, the defendant in that case, had constructed a garage on property bordering the plaintiffs' land. The construction compacted the earth and caused large quantities of surface water to run onto and damage the plaintiffs' property. In addition, the county had constructed an underground drain, ten feet of which was built over and onto the plaintiffs' land, that diverted surface water from the county's land onto the plaintiffs' property. The Ohio Supreme Court held that a taking had occurred:

"If the land, 'in its corporeal substance and entity,' is property, still, all that makes this property of any value is the aggregation of rights or qualities which the law annexes as incidents to the ownership of it. The constitutional prohibition must have been intended to protect all the essential elements of ownership which make property valuable. Among these elements is, fundamentally, the right of user, including, of course, the corresponding right of excluding others from the use. A physical interference with the land, which substantially abridges this right, takes the owner's property to just so great an extent as he is thereby deprived of his right. To deprive one of the use of his land is depriving him of his land; and the private injury is thereby as completely effected as if the land itself were physically taken away. Accordingly it has been held that any use of land for a public purpose, which inflicts an injury upon adjacent land such as would have been actionable if caused by a private owner, is a taking within the meaning of the Constitution and can not be authorized by the Legislature without compensation." *Id.* at 422–423, 5 O.O.2d at 66–67, 149 N.E.2d at 243.

In this case, unlike in *Lucas*, the county has not physically interfered with plaintiffs' land. Nor have plaintiffs suffered a deprivation of any use of their land. Instead, they have claimed only a deprivation of ground water or, more accurately, deprivation of use of ground water. *Lucas* provides no support for their claims that a taking has occurred.

## D

Similarly, the Ohio Supreme Court has held a taking to occur when low-flying aircraft disturb the use or enjoyment of land. See *State ex rel. Royal v.*

*Columbus* (1965), 3 Ohio St.2d 154, 32 O.O.2d 147, 209 N.E.2d 405. In *Royal,* the injury was the loss of use of the plaintiff's residence caused by low-flying aircraft that flew directly above the plaintiff's land. Specifically, there was evidence that the aircraft disturbed sleep, loosened plaster on walls, and jarred dishes and other objects from shelves. It was not necessarily the fact that the aircraft were invading the airspace above the plaintiff's land that caused the taking; rather, it was the interference with the use or enjoyment of the land itself. In fact, in both *Lucas* and *Royal,* the disruption was the loss of the use or enjoyment of land itself. The loss of the use of ground water is not a loss of the use or enjoyment of the overlying land. In this case, plaintiffs' complaint, alleging only a deprivation of the flow of ground water, did not state a claim for compensation.

## E

This court concludes that the deprivation of a landowner's interest in the use of ground water under his or her land does not constitute a taking pursuant to the Ohio Constitution. Therefore, the county was not obligated to institute eminent domain proceedings when its construction work, located off plaintiffs' land, interfered with the flow of ground water under plaintiffs' land. Plaintiffs have not pointed to any authority that provides a landowner with any absolute rights of ownership in ground water. This court does not recognize any such rights. See *Chance v. BP Chemicals, Inc.* (1996), 77 Ohio St.3d 17, 26, 670 N.E.2d 985, 992–993 (rejecting the appellants' assertions of absolute ownership of everything below the surface of their properties). Plaintiffs' assignment of error is overruled.

## III

Plaintiffs' assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, P.J., and CARR, J., concur.