CLINE et al., Appellees and Cross–Appellants,

v.

AMERICAN AGGREGATES CORPORATION, Appellant and Cross–Appellee.

[Cite as *Cline v. American Aggregates Corp.* (1989), 64 Ohio App.3d 503.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–393.

Decided Sept. 21, 1989.

*Michael G. Moore* and *Steve J. Edwards,* for appellees.

*Lucas, Prendergast, Albright, Gibson & Newman* and *Robert Albright; Roetzel & Andress* and *Maryellen Spirito; McNamara & McNamara* and *David Cooper; Porter, Wright, Morris & Arthur* and *Kathy Northern,* for appellant.

BOWMAN, Judge.

In 1982, appellees, Charles and Elsie Paul, along with approximately fifty other plaintiffs, filed suit against appellant, American Aggregates Corporation, alleging American Aggregates, in the conduct of its business of quarry-

ing limestone, had caused the level of the water table in the artesian aquifer underlying appellees' land to drop, thereby causing problems with both the quantity and quality of water in their wells.

Appellant filed a motion for summary judgment based on *Frazier v. Brown* (1861), 12 Ohio St. 294, overruled in *Cline v. American Aggregates Corp.* (1984), 15 Ohio St.3d 384, 15 OBR 501, 474 N.E.2d 324, which held that there were no correlative rights with respect to underground percolating waters and, hence, a landowner was not liable to an adjacent property owner for the loss of such water. While this court affirmed granting of the summary judgment, it was suggested that the common law of Ohio, in effect since 1861, should be reexamined given the advances in the field of hydrology.

In *Cline, supra,* the Supreme Court overruled *Frazier* and held, at the syllabus:

"A proprietor of land or his grantee who withdraws ground water from the land and uses it for a beneficial purpose is not subject to liability for interference with the use of water by another, unless

"(a) the withdrawal of ground water unreasonably causes harm to a proprietor of neighboring land through lowering the water table or reducing artesian pressure,

"(b) the withdrawal of ground water exceeds the proprietor's reasonable share of the annual supply or total store of ground water, or

"(c) the withdrawal of the ground water has a direct and substantial effect upon a watercourse or lake and unreasonably causes harm to a person entitled to the use of its water. (*Frazier v. Brown,* 12 Ohio St. 294, overruled; Section 858 of the Restatement of the Law 2d, Torts, adopted.)"

Upon remand to the trial court, appellant filed a motion to dismiss contending that *Cline* was to be applied prospectively only or, in the alternative, that appellees should only be permitted to recover damages from the date of the decision in *Cline.* The motion was overruled and a jury awarded appellees damages in the amount of $54,274. Appellant has set forth the following assignments of error:

"A. The court below erred in overruling the motion of defendant, American Aggregates Corporation, to dismiss plaintiffs' claim or, in the alternative, for an order limiting retroactive application to the instant case of new property law as set forth in *Cline v. American Aggregates,* 15 Ohio St.3d 384 [15 OBR 501], 474 N.E.2d 324 (1984).

"B. The court below erred in failing to reduce and set off the plaintiffs' recovery by the amount determined by the jury to represent the increase in plaintiffs' property value."

■ In its first assignment of error, appellant argues that, pursuant to *Frazier*, it acquired a property right to the unlimited use of subsurface percolating water without threat of liability and that, while Supreme Court cases overruling earlier decisions are usually applied retrospectively, an exception is made where vested property rights would be affected. Appellees argue that under *Frazier*, appellant acquired no property right in the underground water, but merely a right to use the water, and that *Frazier* created a rule of nonliability as opposed to a property right. The trial court rejected appellant's argument that it had a property right in the underground water and further found that, even if it had a property right, the issue of retrospective or prospective application should have been argued in the Supreme Court.

For the following reasons, we affirm the decision of the trial court in finding that *Cline* did not apply prospectively only. In overruling *Frazier*, the court in *Cline* stated, at 387, 15 OBR at 503–504, 474 N.E.2d at 327:

"Finding this reasonable use doctrine to be much more equitable in the resolution of ground water conflicts, this court overrules *Frazier v. Brown, supra,* and all its progeny and adopts Section 858 of the Restatement of the Law 2d, Torts, as the common law of Ohio.

"Therefore, the judgment of the court of appeals is reversed and the cause is remanded to the trial court *for further proceedings.*" (Emphasis added.)

Thus, the mandate of the Supreme Court is clear that the trial court was to conduct a trial in accordance with its decision, at least as to the original parties to the proceeding, which included the Pauls, and thus the proper rule to be applied in interpreting the application of *Cline* is the doctrine of the law of the case. The purpose of the law-of-the-case doctrine was set forth in *Gohman v. St. Bernard* (1924), 111 Ohio St. 726, 731, 146 N.E. 291, 292–293:

" * * * When so declared and applied, we are of the opinion that the rule is a most salutary one in the interest of more orderly administration of justice. The rule originated in the necessity of a trial court obeying the mandate of an appellate court upon the retrial of a cause. Manifestly, an appellate court would be rendered impotent if its orders could be ignored at will, and if it were required to relitigate the same question in the same case upon subsequent and probably numerous appeals. * * * "

The doctrine of the law of the case was succinctly summarized in *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3–4, 11 OBR 1, 2–3, 462 N.E.2d 410, 412–413:

"Briefly, the doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. * * *

"In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts.   * * *   Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law.   * * *   Moreover, the trial court is without authority to extend or vary the mandate given. * * * "   (Citations omitted.)

In this case, there is no language, either express or implied, that *Cline* was to be applied prospectively only and not to apply to the original parties to the proceedings.   To so conclude would make meaningless the language in the instructions of the Supreme Court remanding the cause "to the trial court for further proceedings."   If appellant had any doubt as to the application of *Cline* to the original parties to this action which included appellees, it should have raised the issue in the Supreme Court either during argument or following the release of the decision in *Cline* by motion for reconsideration or a motion for a rehearing.   Appellant's first assignment of error is overruled.

In its second assignment of error, appellant asserts that the trial court erred by not reducing and setting off the amount of appellees' award by the amount the jury determined appellees had benefitted from their property being annexed to the city of Columbus.   The jury determined that, as a result of appellant's actions, appellees had been damaged in the amount of $54,270; however, the jury also determined that, as a result of the annexation to the city of Columbus, appellees' property increased in value by $6,000.   Appellant asserts that, pursuant to the benefits rule, the jury award of $54,270 should be reduced by the $6,000 benefit in increased property value by appellees' annexation to the city of Columbus for a total award of $48,274.

The benefits rule is set forth in 4 Restatement of the Law 2d, Torts (1979) 509, Section 920:

"When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable."

The benefits rule is intended to place an injured party as nearly as possible in the position he would have occupied had it not been for the tortious conduct of another.   Thus, this principle is intended to restrict an injured person's recovery to the harm he actually incurred, and not to permit the tortfeasor to force a benefit on him against his will.   *Id.* at Comment *f.*   Under the benefits rule, to justify a reduction or setoff in damages, the benefit to the injured party must result from the tortious conduct.   *Id.* at Comment *d.*

■ In this case, it cannot be said that appellees' annexation of their property to the city of Columbus was a direct result of appellant's pumping underground water for use in its mining business. Had appellees so desired, they could have annexed their property to the city of Columbus prior to appellant's causing problems with the quality and quantity of the water in their wells. It was only after appellees' own water supply was harmed by appellant's actions that they were forced to look elsewhere for a solution to their water supply problems. Any benefit to appellees' property from being annexed to the city of Columbus resulted not from the tortious conduct of appellant, but from appellees' own efforts to alleviate the problems caused by appellant. Accordingly, appellant's second assignment of error is overruled.

Appellees have filed a cross-appeal and assert the following assignments of error:

"1. The trial court erred in failing to instruct the jury that Appellees' use of water for domestic purposes is a per se reasonable use under Sections 850(A) and 858, *Restatement of Torts, 2d.*

"2. The trial court erred in instructing the jury that Appellees must prove Appellant's conduct failed to meet all of the first four criteria under Section 850(A), *Restatement of Torts, 2d,* before Appellees established a prima facie case under Section 858, *Restatement of Torts, 2d.*

"3. The trial court erred in failing to instruct the jury that Appellees need only use reasonable care to minimize their damages.

"4. The trial court erred in allowing Appellant's expert, Herb Eagon, to base his opinions upon Defendant–Appellant's Exhibit Q and admitting into evidence Defendant–Appellant's Exhibit Q."

Appellees' first two assignments of error are related and will be considered together. In these assignments of error, appellees assert that the trial court gave jury instructions which did not conform to the reasonable use doctrine adopted in *Cline, supra.*

In *Cline, supra,* the Supreme Court adopted 4 Restatement of the Law 2d, Torts (1979) 258, Section 858, and stated, at the syllabus:

"A proprietor of land or his grantee who withdraws ground water from the land and uses it for a beneficial purpose is not subject to liability for interference with the use of water by another, unless

"(a) the withdrawal of ground water unreasonably causes harm to a proprietor of neighboring land through lowering the water table or reducing artesian pressure,

"(b) the withdrawal of ground water exceeds the proprietor's reasonable share of the annual supply or total store of ground water, or

"(c) the withdrawal of the ground water has a direct and substantial effect upon a watercourse or lake and unreasonably causes harm to a person entitled to the use of its water.  * * * "

The beneficial nature of the use of ground water is tested by the principle stated in 4 Restatement of the Law 2d, Torts (1979) 220, Section 850A.  4 Restatement of the Law 2d, Torts (1979) 258, Section 858, Comment *d.* Section 850A states:

"The determination of the reasonableness of a use of water depends upon a consideration of the interests of the riparian proprietor making the use, of any riparian proprietor harmed by it and of society as a whole.  Factors that affect the determination include the following:

"(a) The purpose of the use,

"(b) the suitability of the use to the watercourse or lake,

"(c) the economic value of the use,

"(d) the social value of the use,

"(e) the extent and amount of the harm it causes,

"(f) the practicality of avoiding the harm by adjusting the use or method of use of one proprietor or the other,

"(g) the practicality of adjusting the quantity of water used by each proprietor,

"(h) the protection of existing values of water uses, land, investments and enterprises, and

"(i) the justice of requiring the user causing harm to bear the loss."

In this case, appellees requested that the court instruct the jury that among competing uses of ground water, the law favors domestic uses and, thus, domestic uses are given a legal presumption of reasonableness.  See 4 Restatement of the Law 2d, Torts (1979) 220, Section 850A, Comment on clause (a), Paragraph c.  Appellees assert that the instruction which the court gave required appellees to prove by a preponderance of the evidence that appellant's conduct violated all of the first four factors of Section 850A(a) through (d) before a jury could find that appellant's use of the water was unreasonable.  Appellees assert that a correct reading of Section 850A would allow a jury to make a finding that a use of water is unreasonable if it is proven that a defendant's conduct does not meet any one of the first four factors in Section 850A(a) through (d).  The court, in its jury instruction, stated:

"With respect to this first step in determining the reasonableness or unreasonableness of the plaintiffs' and defendant's use of water, if you find

that plaintiffs have failed to prove, by a preponderance of the evidence, one, that plaintiffs' use of the ground water was beneficial; two, that their use was suited to the subject aquifer; three, that their use was economically valuable; and four, that their use was socially valuable, then you must find that plaintiffs' use of water from the aquifer did not satisfy these first four factors and find in favor of the defendant, American Aggregates.

"If you find that plaintiffs have proved by a preponderance of the evidence that their use of water satisfies these first four factors, you must then determine whether American Aggregates' use of water satisfies these first four factors.

"If you find that plaintiffs have failed to prove by a preponderance of the evidence: one, that American Aggregates' use of water does not have a beneficial purpose; two, is not suited to the subject aquifer; three, has no economic value; and four, has no social value, then you must find that American Aggregates' use of water satisfies these first four factors.

"If you find that plaintiffs have proved, by a preponderance of the evidence, one, that defendant's use of ground water does not have a beneficial purpose; two, is not suited to the aquifer; three, has little or no economic value; or four, has little or no social value, then you must find that American Aggregates' use of water is unreasonable.

"Thus, if you find that plaintiffs have proved by a preponderance of the evidence that defendant's use of water did not satisfy these first four factors, thus making the defendant's use of water unreasonable, and if you further find that plaintiffs' use of water did satisfy these first four factors, then you must go on to determine whether the defendant's unreasonable use of water was a direct and proximate cause of substantial harm to the plaintiffs' land."

■ Although this court agrees that the trial court's instruction was erroneous and did not conform to the law as set forth in *Cline, supra,* or 4 Restatement of the Law 2d, Torts (1979) 220, Section 850A, this court finds that appellees were not prejudiced by the instruction since the jury found that appellees' use of water was reasonable (Interrogatory 1), and further found that appellant's pumping of the water was unreasonable (Interrogatory 2). The jury then determined that appellant's pumping of water proximately caused substantial harm to appellees' wells, lowered the water level in appellees' wells and also reduced water pressure available to the wells (Interrogatory 4). Consequently, the jury found that appellant was liable for the harm to appellees' wells and awarded damages to appellees as a result. Accordingly, appellees' first and second assignments of error are not well taken.

In their third assignment of error, appellees assert that the trial court erred in failing to instruct the jury that appellees need only take reasonable steps to minimize their damages.

■ The rule requiring a person injured by the wrongful act or omission of another to minimize the damages resulting from the wrongful act or omission does not require a party to make extraordinary efforts, or to do what is unreasonable or impracticable. Instead, a person is required to use ordinary and reasonable care, diligence and prudence to minimize the damages resulting from the wrongful act or omission. *Foust v. Valleybrook Realty Co.* (1981), 4 Ohio App.3d 164, 4 OBR 264, 446 N.E.2d 1122.

On the issue of appellees' duty to mitigate or minimize their damages, the court, in its jury instruction, stated:

" * * * It is the law that even if one is damaged, one still has a duty to see that such damage is kept at a minimum. In other words, if you find that the plaintiffs could have improved the quality and/or quantity of their water by use of *reasonably* available technology, improved well maintenance, or any other *reasonable* adjustment in their use of water, then you may award the plaintiffs no damages or you may reduce the amount of damages by that amount which you fine [*sic*] was directly and proximately caused by plaintiffs' failure to mitigate their damages." (Emphasis added.)

This court finds that the trial court's instruction was proper in that it stated that appellees need only take reasonable steps to minimize their damages. The jury determined that appellees did not fail to mitigate or minimize their damages and that appellees acted reasonably (Interrogatory 6). Accordingly, appellees' third assignment of error is not well taken.

■ In their fourth assignment of error, appellees assert that the trial court erred in admitting Exhibit Q into evidence as a business record, and permitting appellant's expert to base his opinion upon Exhibit Q.

Exhibit Q was prepared by Fred Klaer, who made an on-site investigation of a well on behalf of Herbert Eagon, appellant's expert. Eagon testified that Klaer was an independent consultant who worked for him essentially as a subcontractor and under his supervision. Exhibit Q is the result of Klaer's on-site investigation of the well.

Appellees assert that Exhibit Q was erroneously admitted into evidence as a business record.

Under Evid.R. 803(6), documentary records of a business concerning acts, events or conditions may be introduced as evidence so long as foundational evidence demonstrates that:

" * * * (i) the record was prepared by an employee of the business who had a duty to report the information; (ii) the person providing the information contained in the record had personal knowledge of the event or transaction reported; (iii) the record was prepared at or near the time of the event or transaction; and (iv) it was a regular practice or custom of the business in question to prepare and retain the type of record. * * *" *McCormick v. Mirrored Image, Inc.* (1982), 7 Ohio App.3d 232, 233, 7 OBR 294, 295–296, 454 N.E.2d 1363, 1365.

In this case, Exhibit Q was prepared by Klaer, a subcontractor to Eagon who was required to provide Eagon with the results of his on-site investigation; Klaer had personal knowledge of the information he reported to Eagon; Klaer prepared the record at the time he was investigating the well; and Eagon testified that it was a regular practice or custom of his business to prepare and retain an investigation report such as the one Klaer prepared. Accordingly, the proper foundation was laid, and the court did not err in admitting Exhibit Q as a business record.

█ Next, appellees assert that the trial court erred in permitting Eagon to authenticate Exhibit Q and base his opinion on it.

Evid.R. 803(6) refers to " * * * testimony of the custodian or other qualified witness * * *," and then refers to Evid.R. 901(B)(10), which provides that, with respect to the authentication or identification of evidence, any method of authentication or identification provided by statute not in conflict with a rule of the Supreme Court of Ohio or by other rules proscribed by the Supreme Court is permitted. *Hardesty v. Corrova* (1986), 27 Ohio App.3d 332, 27 OBR 389, 501 N.E.2d 81. R.C. 2317.40 permits authentication of a business record by " * * * the custodian or the person who made such record or under whose supervision such record was made * * *."

In this case, Exhibit Q was prepared by Klaer under Eagon's supervision and control and Eagon was an appropriate witness to authenticate Exhibit Q and, pursuant to Evid.R. 703, Eagon was permitted to base his expert opinion upon facts or data which were admitted into evidence. Accordingly, the trial court did not err in admitting Exhibit Q, nor did it err in permitting Eagon to base his expert opinion on Exhibit Q. Appellees' fourth assignment of error is not well taken.

Appellant's two assignments of error on the instant appeal are not well taken and are overruled. Appellees' four assignments of error on the cross-appeal are also not well taken and are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and REILLY, JJ., concur.