OPINION
Defendants-appellants Mary Lou and Steven Stern appeal the decision of the Jefferson County Common Pleas Court which found that implied easements for water, sewer and access existed over their land in favor of plaintiffs-appellees Lanson and Joyce Stern. For the following reasons, the trial court's judgment is affirmed.
Warren Stern owned a large parcel of property with a house on it in Jefferson County. He also owned a small parcel of property with a house on it. The small parcel was totally surrounded by the large parcel. Thus, a drive connected the small parcel to the main road by cutting across the large parcel. Water was transferred to the small parcel from a spring located on the large parcel. Sewage was carried away from the small parcel through a pipe which discharged under the large parcel.
In 1989, Warren transferred the small parcel to his son, Lanson. After Warren died, the large parcel was sold at an auction in April 1994 to Warren's son, Louis Stern. That summer, Steven Stern, another son of Warren, moved into the house on the large parcel of land with his friend Mary Lou, whom he later married in July 1995.
In March 1995, Lanson and his wife Joyce filed a complaint against Louis and his wife Laura alleging interference with their implied easements concerning water, sewer and access. Louis and Laura admitted these easements existed but denied interference. In March 1996, Mary Lou signed and recorded a land installment contract as the buyer of the large parcel. Steven signed as a witness, and Louis and Laura signed as the sellers. This 1996 contract stated that it was effective in November 1994 and that payments had begun in December 1994. Mary Lou claimed that before 1996 she had been making payments based upon a verbal agreement.
Thereafter, Lanson and Joyce became aware of this land transfer and amended their complaint on July 9, 1997 to add two defendants. Mary Lou was added as the new owner of the land, and Steven was added as Mary Lou's husband with a dower interest. The court then bifurcated the case.[1] The trial of the equitable issues was held on October 9, 1997. Steven testified that, before he moved onto the property, he knew about the water and sewer lines and the access road. Mary Lou testified that she knew about the water line and the access road but did not know about the sewer line. Both testified that they were aware of the lawsuit against Louis and Laura before they were married in July 1995.
The trial court released its judgment entry on December 4, 1997, finding that Lanson and Joyce held implied easements for water, sewer and access. The court found that Mary Lou's testimony regarding the sewer line was not credible. The within appeal followed, wherein only the easements for water and sewer are contested.
Appellants [Mary Lou and Steven] set forth three assignments of error. Assignments number two and three will be discussed first. These assignments contend:
 "THE TRIAL COURT ERRED IN ITS CONCLUSION THAT OHIO LAW RECOGNIZES THAT THE USE OF WATER FROM A SPRING AND THE DISPOSAL OF RAW SEWAGE ARE RIGHTS WHICH CAN BE ACQUIRED AS EASEMENTS APPURTENANT."
 "THE TRIAL COURT ERRED IN ITS CONCLUSION WHEN IT GRANTED APPELLEE AN EASEMENT AND NOT A LICENSE."
Appellants insist that use of spring water and the disposal of sewage are not interests in land which can be acquired by easements appurtenant, but that these interests can only be acquired by a license to enter. An easement appurtenant is one where the burdened or servient land is used in a way that benefits a particular tract of land known as the dominant estate. See Rousenberg v. Krone (Dec. 16, 1998), Monroe App. No. 775, unreported, 3. The Supreme Court of Ohio has held that such easements can be implied to establish the dominant estate's right to use the water source of the servient estate and to discharge sewer into the septic system of the servient estate. Campbell v.Great Miami Aerie No. 2309, Fraternal Order of Eagles (1984),15 Ohio St.3d 79 (sewer); Renner v. Johnson (1965), 2 Ohio St.2d 195
(water and sewer). As a result, appellants' argument that a landowner cannot acquire an easement to use water from a neighbor's land or to dispose of sewage under a neighbor's land but can only acquire a license, is misguided. Hence, on the above Supreme Court authority, these assignments of error are overruled.
In the alternative, appellants attempt to argue that their future water supply is threatened and that they suffer low water pressure when water is running at the dominant estate citing Cliney. American Aggregates Corp. (1984), 15 Ohio St.3d 384. However, these were not issues at the trial court level. The issue before the trial court was whether the dominant estate had implied easements to continue using the water lines and sewage pipes as it had since a common grantor installed them. Appellees were the plaintiffs; they sought to have the court declare their rights regarding the implied easements appurtenant. Appellants did not offer a counterclaim seeking to bar appellees from unreasonably using water. Thus, this is not a proper topic for this appeal.
Furthermore, no evidence was presented in support of the contention that appellees water use was unreasonable. See Id. (adopting the reasonable use doctrine with regards to how a landowner's use of ground water affects his neighbors). The mere allegation of low water pressure does not establish unreasonable use. As such, this argument is overruled.
Appellant's first assignment of error, which we are discussing last, alleges:
 "THE TRIAL COURT ERRED IN ITS CONCLUSION WHEN IT HELD THAT APPELLANT MARY LOU STERN WAS [NOT] A BONA FIDE PURCHASER OF THE LAND."
As aforementioned, Steven admitted that he knew of the water and sewer lines since the time they were installed by his parents, who were the predecessors in title on both pieces of land. Mary Lou admitted that, at the time she moved onto the property in August or September of 1994, she knew that appellees water was drawn from her spring. She claimed to have no knowledge of the sewer discharge. However, the trial court specifically found that such claim lacked credibility. Thus, the court held that because Mary Lou had notice of the water and sewer lines before she purchased the property, she was subject to appellees' implied easements.
An implied easement over a certain parcel of land may not be asserted against a subsequent bona fide purchaser of that land who had no notice of the feature that constitutes the easement. See Campbell at 81-82; Renner at 197-198. However, a bona fide purchaser is bound by even an unrecorded encumbrance upon land if he has actual knowledge of the encumbrance at the time the land is purchased. Emrick v. Multicon Builders, Inc. (1991), 57 Ohio St.3d 107,110; Tiller v. Hinton (1985), 19 Ohio St.3d 66, 68. Cf. R.C. 5301.25.[2]
Appellants claim that Mary Lou had no notice of the claim to the easements at the time that she purchased the land. Appellants contend that the purchase date is November 3, 1994, which is the date on which the land installment contract purports to take effect. Appellees, on the other hand, argue that the purchase date is not until 1996, which is when the land installment contract and the deed were signed and recorded.
Assuming arguendo that the date of purchase was in November 1994, Mary Lou admitted that she knew, when she moved onto the property in the summer of 1994, about the water line which carried water away from her property. (Tr. 39-40). Thus, she admits to have had actual knowledge of appellees' prior and continuing use of the spring under her property. As such, regardless of the date of purchase, it appears that the defense of bona fide purchaser cannot apply to defeat appellee's implied easement for water rights. See, e.g., Emrick; Tiller; Campbell;Renner.
As for the claim of an implied easement for sewage disposal, Mary Lou claimed to have no knowledge of the sewer line. However, the trial court specifically found that such testimony was not credible. Witness credibility is primarily an issue for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 231. The trial court occupied a superior vantage point from which to view the witnesses' demeanor, voice inflections and gestures. SeasonsCoal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
Steven knew of both the water and sewer lines. In fact, he assisted his father in installing the water line, he watched his mother install the sewer line and he lived in appellees' house before they did. Steven testified that he wanted to purchase the large parcel from the beginning but would not since he was in the process of divorcing his first wife. He also stated that the reason that only his new wife Mary Lou was named as the buyer was because he could not get a loan as a result of his ex-wife.
Actual knowledge may be inferred in some instances. Emrick at 110. Hence, the court may have inferred that before Steven encouraged his live-in girlfriend, soon to be new wife, to buy his family farm he would discuss with her its features. Assumingarguendo, that the trial court was incorrect in determining that Mary Lou knew of the sewer lines prior to November 1994, there remains another reason why she is not a bona fide purchaser who lacks notice. This reason revolves around our determination infra
that Mary Lou did not become a purchaser, let alone a bona fide purchaser, until 1996.
A land installment contract must be written, signed and then recorded within twenty days after signing. R.C. 5313.02 (A) and (C). After reading the land installment contract in this case, it is obvious that it was not written, signed or recorded until March 1996. See the portion of the land installment contract which provides:
 "Said purchase price of Eighty Nine Thousand Dollars ($89,000.00) is to be paid in the following: SELLERS acknowledge that BUYER has paid Thirty Thousand Dollars ($30,000.00) down plus Two Thousand Three Hundred Seventy-nine Dollars ($2,379.00) toward the principal balance of said purchase price, as of March 12, 1996."
Appellants' testimony alludes to a verbal agreement upon which they allegedly made payments to Louis and Laura since they took possession in the summer 1994. Then there is the land installment contract which states that it is effective November 1994 and that the first payment was in December 1994. The issue is whether the land installment contract which was not drafted, signed or recorded until March 1996 can apply retroactively to make Mary Lou a bona fide purchaser on the contract's purported effective date of November 3, 1994. We hold that it cannot.
First of all, there is no evidence of when Mary Lou made the $30,000 down payment to Louis and Laura. For all we know, this could have occurred in March 1996. Steven and Mary Lou could have been renters from the summer 1994 until March 1996. In fact, the answer filed by Louis and Laura in August 1995 admitted that they owned the property. It is around this time that appellants admit to becoming aware of the lawsuit. Nevertheless, they did not seek to assert their rights, even though they now claim that Mary Lou had already purchased the property. Moreover, Steven testified that the verbal agreement was between Louis and he, not between Louis and Mary Lou who ended up being the purchaser in the written agreement. (Tr. 37).
Finally, as aforementioned, a land installment contract is required by statute to be in writing and signed. Where the date of a land sale is a critical point that affects the rights of an easement holder, a land installment contract cannot be drafted so as to purport to have existed more than one year before it is put into writing and signed. We refuse to allow the purchaser to backdate a land installment contract when such a procedure would result in that purchaser being given a bona fide status that would not otherwise exist, especially where no evidence is presented with regards to the date that the down payment was made.
Therefore, the land installment contract did not exist for purposes of this lawsuit until 1996. By this time, Mary Lou and Steven were married. Steven had actual knowledge of the implied easements ever since they first existed. Appellants' reply brief concedes that Mary Lou had constructive knowledge of appellees' claim concerning the easements in March 1995, which is when the lawsuit was filed. See Renner at 199; R.C. 2703.36. Additionally, according to her own testimony, she had actual knowledge of the lawsuit around July 1995. (Tr. 41). Thus, the trial court did not err when it found that Mary Lou was not a bona fide purchaser without notice of the easement claims. As such, this assignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 _________________________________ JOSEPH J. VUKOVICH, JUDGE
[1] This appeal arose out of the trial of the equitable issues. The trial of the legal issues resulted in Stern v. Stern, Jefferson App. No. 97 JE 68, which is also currently before this court.
[2] Furthermore, it appears that in limited circumstances, constructive notice of a land encumbrance may preclude a subsequent purchaser from taking free of the encumbrance. Pursuant to R.C. 2703.26, which is the codification of the doctrine of lis pendens, a purchaser is charged with notice of any issues presented in a pending lawsuit which directly concern the property to be purchased. Specifically, constructive notice of an easement exists when a claimant files a lawsuit alleging easements exist in the property to be purchased. Renner at 199.