VILLAGE OF BRADY LAKE et al., Appellants,

v.

CITY OF KENT, Appellee.

[Cite as *Brady Lake v. Kent,* 148 Ohio App.3d 429, 2002-Ohio-3141.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2001–P–0093.

Decided June 21, 2002.

Steven J. Edwards, for appellants.

Jones, Day, Reavis & Pogue and Jack A. Van Kley;  James R. Silver, Kent Law Director, for appellee.

DIANE V. GRENDELL, Judge.

{¶ 1}  The village of Brady Lake along with 48 other plaintiffs, ("appellants"), appeal the July 5, 2001 judgment entry by the Portage Court of Common Pleas, granting summary judgment in favor of the city of Kent, ("appellee"), based on immunity under R.C. 2744.02.  For the foregoing reasons, we reverse and remand the judgment of the lower court.

{¶ 2}  Appellants are owners of real property and/or residents of the village of Brady Lake, Portage County, Ohio.  On March 12, 1998, appellants filed a complaint against appellee.  Appellants alleged that, as a result of the pumping of groundwater from its Breakneck Creek well field to operate its municipal water supply system, appellee inflicted unreasonable harm upon them through the lowering of the water table, the decreased quantity and quality of water in their wells, and the lowering of the water level in Brady Lake.  Appellants claimed that appellee's pumping caused them to incur expenses, suffering, inconvenience, and annoyance.  Appellants added that the decreased water level of Lake Brady reduced their ability to enjoy the lake and caused the value of their real property to decline.  Appellants sought damages and reasonable attorney fees.[1]

---

1. Appellants also set forth an additional claim, alleging that a settlement agreement was reached previously in return for the dismissal of a prior lawsuit.  Appellants claimed that appellee agreed to install three recharge lagoons;  however, appellee installed only one.  Appellee filed a motion for summary judgment as to this claim, denying that such an agreement existed and arguing that appellants failed to file that claim within the statute of

{¶ 3}  Subsequently, on May 7, 1998, appellee filed an answer, acknowledging that it was pumping water from its Breakneck Creek well field to operate its municipal water supply system.  Appellee asserted various defenses including, among others, that appellants failed to join indispensable and/or necessary parties, that appellants' claims were barred by sovereign immunity, and that some of appellants' claims were barred by res judicata and collateral estoppel.[2]

{¶ 4}  On November 15, 2000, appellee filed a motion for summary judgment, moving to dismiss the case on the grounds that appellants' claims were barred by sovereign immunity.  Appellee averred that as a political subdivision, it was immune from liability for damages under R.C. 2744.02(A).  Appellee added that appellants could not prove that one of the exceptions in R.C. 2744.02(B) applied because appellants never alleged that it or its employees negligently established, maintained, or operated the water supply.  Appellee further contended that, even if appellants could sustain their burden of proving negligence or some other exception to immunity, R.C. 2744.03(A)(3) and (5) provided it with defenses to liability.[3]  Appellee attached numerous exhibits in support of its motion for summary judgment.

{¶ 5}  On January 3, 2001, appellants filed a memorandum in response to appellee's motion.  Appellants argued that appellee could pump water from the well field and not be liable; however, when they pumped more than what was reasonable, liability attached.  Appellants averred that, once the water plant

---

limitations.  The trial court granted appellee's motion and dismissed the claim.  Appellants do *not* appeal this decision by the trial court.

2.  Previously, on January 24, 1992, the village of Brady Lake along with 32 appellants, of which 17, including the village of Brady Lake, are appellants in the instant case, filed a suit against appellee.  The appellants in the previous case alleged that appellee's pumping of groundwater at the Breakneck Creek well field caused them unreasonable harm by the lowering of the water table and the level of Brady Lake and drying up their wells.  The trial court granted appellee's partial motion for summary on the claims of 17 of those appellants on the grounds that the statute of limitations barred their claims for damages due to the loss of water in their wells.  This court affirmed the decision in *Brady Lake v. Kent* (Nov. 3, 1995), 11th Dist. No. 94–P–0047, 1995 WL 803615..

3.  Additionally, in the event that any of appellants' claims survived the defense of sovereign immunity, or as additional grounds for summary judgment, appellee set forth additional arguments.  Appellee asserted that the village of Brady Lake and 6 other appellants were prohibited from asserting the instant suit because they previously filed and dismissed two other lawsuits for the same claims.  Appellee argued that Civ.R. 41(A) protected against harassing litigation.  Appellee also averred that 40 appellants possessed no riparian rights to Brady Lake; therefore, they had no standing to assert claims for the unreasonable use of its water.  Finally, appellee contended that the doctrine of res judicata barred the village of Brady Lake and 11 other appellants from refiling claims for the reduction of the water level in their wells because the trial court and this court previously determined that those claims were barred by the statute of limitations.  The trial court never addressed these issues because the trial court resolved the case based on the immunity.

began to operate, immunity ceased because the decisions made in operating a water plant did not involve the activities that immunity was designed to protect. Rather, the activities were ministerial or merely carried out policy. Appellants asserted that the pumping of groundwater was not a decision that involved policy-making, planning, or enforcement of powers or judgment or discretion in whether to acquire equipment, supplies, materials, personnel, facilities, or other resources. Appellants emphasized that their claims were not based on appellee's decision to purchase the property, to drill the wells, to pump more than one well, or to allow new customers to tie into the water system. Appellants further argued that appellee owed them a duty and breach of that duty went to the unreasonableness of its water use. Appellants argued that the determination of reasonableness was the same analysis that was used to determine negligence. Appellants posited that they do not have to prove that appellee was inefficient in the operation of its waterworks.[4]

{¶ 6} Subsequently, on March 22, 2001, appellee filed a response to appellants' memorandum. Appellee asserted that appellants failed to demonstrate that any of the exceptions of R.C. 2744.02(B) applied. Appellee stated that, even if appellants produced evidence of negligence, it would still have a complete defense under R.C. 2744.03(B)(3) and (5) for discretionary acts undertaken by it and its employees. Appellee stressed that appellants failed to submit any evidence to show that it was negligent in the operation of its well field or to disprove that its activities were the exercise of judgment or discretion.

{¶ 7} On July 5, 2001, the trial court filed a judgment entry, granting appellee's motion for summary judgment. The trial court determined that appellee was immune to a claim for damages for its alleged unreasonable use of groundwater in its municipal system, holding that the General Assembly had not excepted that specific tort from the blanket immunity granted to governmental and proprietary municipal activities under R.C. 2744.02(A). The trial court ruled that, under R.C. 2744.02(B)(2), appellee was subject to liability only if the acts of its employees, which proximately caused appellants' harm, were performed in a

---

4. As to the argument raised in appellee's motion concerning standing, appellants contended that they had standing to allege damages because they had a right to use the lake for recreational activities. Appellants added that some of their deeds showed ownership to the lake. As support, appellants attached copies of most of their deeds. Appellants also included an affidavit by Beth Hudson, a title examiner, who, upon examining the deeds, stated that the right to use Brady Lake for recreational activities was transferred to various lots owned by appellants; thus, those lot owners had a right to use the lake for recreational purposes. As to the res judicata and Civ.R. 41(A) claims, appellants argued that, unlike their previous complaint filed in *Brady Lake v. Kent*, supra, 11th Dist. No. 94–P–0047, 1995 WL 803615 they now alleged quality problems with their wells, which were ongoing; thus, those claims were never pleaded. Appellants explained that there are new damages, which could not have been pleaded before. The trial court did not address these issues.

negligent manner. Since appellants did not specifically allege that appellee's employees acted negligently in taking water from the aquifer, the trial court concluded that appellants' claim was not negligence in tort, but, rather, was the separately recognized tort of unreasonable use of, or interference with, groundwater.

{¶ 8} Appellants filed a timely notice of appeal, asserting the following assignment of error:

{¶ 9} "The trial court erred to the prejudice of plaintiffs-appellants in granting defendant-appellee's motion for summary judgment."

{¶ 10} In their sole assignment of error, appellants contend that the unreasonable harm that results from the pumping of groundwater by a municipality constitutes the negligent performance of a governmental proprietary function under R.C. 2744.02(B)(2). Appellants assert that they suffered unreasonable harm through the lowering of the water table and the level of Brady Lake and the decrease in quantity and quality of their well water. Appellants argue that they effectively alleged negligence in that appellee caused them unreasonable harm. Appellants aver that appellee owed them a duty to avoid causing them unreasonable harm and appellee breached that duty, resulting in injury to them. As to R.C. 2744.03(A)(3) and (5), appellants claim that a municipality that pumps groundwater, causing unreasonable harm to surrounding homeowners, is not exercising judgment or discretion that entitles it to immunity. Appellants argue that actions that set policy are entitled to immunity but not actions that are ministerial or merely carry out policy. Appellants posit that the pumping of groundwater involves no discretion or judgment, other than turning on the pump; thus, it is merely the implementation of policy, deserving no immunity.

{¶ 11} We begin with the applicable law for reviewing a motion for summary judgment. On appeal, a reviewing court conducts a de novo review of a trial court's summary judgment entry. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 671 N.E.2d 241. A de novo review requires an independent review of the trial court's decision without any deference to it. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Summary judgment is a procedural device designed to avoid a formal trial when there is nothing left to litigate. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615. Civ.R. 56(C) provides that summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewing the evidence most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. See *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201.

{¶ 12}  Once a moving party satisfies that party's burden of supporting his or her motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the nonmoving party may not rest upon allegations or denials of the moving party's pleadings. Rather, the nonmoving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 663 N.E.2d 639. A "genuine issue" exists when a reasonable jury could return a verdict for the nonmoving party based upon the evidence. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. The principal purpose for Civ.R. 56(E) is to allow the court to analyze the evidence in order to determine whether there exists an actual need for a formal trial. *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau* (2000), 88 Ohio St.3d 292, 725 N.E.2d 646.

{¶ 13}  The trial court's decision to grant summary judgment in favor of appellee is based solely on statutory immunity. Because that decision was based solely on immunity, the trial court did not address appellee's other arguments.[5] Understandably, appellants' arguments on appeal pertain *only* to the statutory immunity defense that was the basis for the trial court's decision.

{¶ 14}  R.C. 2744.02(A)(1) provides that a political subdivision is not liable for damages in a civil suit arising from injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or its employees in connection with a governmental or proprietary function. Appellants do not dispute that appellee is a municipal corporation, fitting the definition of a "political subdivision" under R.C. 2744.01(F). Additionally, the operation of a municipal corporation water supply company is a "proprietary function." See R.C. 2744.01(G)(2)(c); *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 679 N.E.2d 1109.

{¶ 15}  However, R.C. 2744.02(B) sets forth five exceptions to the immunity that is granted to political subdivisions under R.C. 2744.02(A)(1). Pursuant to R.C. 2744.02(B), under certain circumstances, a political subdivision can be held liable for damages in a civil suit arising from injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or its employees in connection with a governmental or proprietary function.

{¶ 16}  Specifically in the instant case, appellants contend that R.C. 2744.02(B)(2) is applicable. R.C. 2744.02(B)(2) provides that a political subdivision can be held liable for damages in a civil suit arising from injury, death, or loss to persons or property where an employee of the political subdivision *negligently performs* acts with respect to proprietary functions. Once a munici-

---

5.  Upon remand, the trial court is free to address these other summary judgment arguments.

pality makes a decision to engage in a proprietary function, it will be held liable for the negligence of its employees in the performance of their activities. *Zents v. Summit Cty. Bd. of Commrs.* (1984), 9 Ohio St.3d 204, 9 OBR 516, 459 N.E.2d 881, syllabus.

{¶ 17} In the case sub judice, appellants' complaint alleged that, as a result of the pumping of groundwater, appellee inflicted unreasonable harm upon them through the lowering of the water table, the decreased quantity and quality of their well water, and the lowering of the water level in Brady Lake. Appellants' stated cause of action is for "unreasonable use of, or interference with groundwater." The Ohio Supreme Court in *Cline v. Am. Aggregates Corp.* (1984), 15 Ohio St.3d 384, 15 OBR 501, 474 N.E.2d 324, provided a cause of action for unreasonable interference with the use of groundwater. See, also, R.C. 1521.17 (codifying the factors when determining the reasonable use of water.) In *Cline*, the court applied Section 858 of the Restatement of the Law 2d, Torts, and adopted a reasonable-use doctrine regarding groundwater issues. Id. at 387, 15 OBR 501, 474 N.E.2d 324. In adopting Section 858, the Supreme Court of Ohio held:

{¶ 18} "A proprietor of land or his grantee who withdraws ground water from the land and uses it for a beneficial purpose is not subject to liability for interference with the use of water by another, unless

{¶ 19} "(a) the withdrawal of ground water unreasonably causes harm to a proprietor of neighboring land through lowering the water table or reducing artesian pressure,

{¶ 20} "(b) the withdrawal of ground water exceeds the proprietor's reasonable share of the annual supply or total store of ground water, or

{¶ 21} "(c) the withdrawal of the ground water has a direct and substantial effect upon a watercourse or lake and unreasonably causes harm to a person entitled to the use of its water." *Cline*, supra, at syllabus.

{¶ 22} The Ohio Supreme Court found that the reasonable use doctrine was much more equitable in the resolution of ground water conflicts. Id. at 387, 15 OBR 501, 474 N.E.2d 324.

{¶ 23} The trial court granted summary judgment to appellee based on a narrow interpretation of R.C. 2744.02.[6] The trial court found that only pure

---

**6.** While appellee asserted numerous arguments to the trial court in support of its summary judgment motion, the trial court based its decision on only an aspect of appellee's municipal-immunity argument. The trial court did not address the other reasons asserted in support of summary judgment by appellee. Appellants understandably did not include these issues on appeal. It would be unfair for this court to address these issues at this time because they were not adjudicated by the trial court and, therefore, have not been properly framed for appeal.

"negligence" is excluded by R.C. 2744.02. The conclusion that the legislature's reference to "negligence" in the exclusion to immunity in R.C. 2744.02 totally immunizes governmental entities from liability for willful misconduct or non-pure negligence torts is misguided. The legislature could not contemplate every form of actionable governmental misconduct. It is incomprehensible to conclude that the legislature intended to hold governmental entities liable for negligent acts, but immune from even more culpable and offensive "willful" or other tortious misconduct. Therefore, this court concludes that the term "negligence" as used in R.C. 2744.02 refers to the tortious breach of a duty (negligence being a breach of a legal duty) by governmental officials.

{¶ 24} In this case, appellee had a duty not to unreasonably withdraw groundwater. The unreasonable withdrawal of groundwater would constitute a breach of that duty. The determination of reasonableness is determinative of whether the appellee breached its duty owed to appellants. This is the same analysis conducted to determine whether a party is negligent. The only difference is that the Ohio Supreme Court, in *Cline,* supra, at 384, 15 OBR 501, 474 N.E.2d 324, and the legislature in R.C. 1521.17, have set forth factors to be used in adjudicating whether there has been unreasonable harm. These same factors, adjusted for differing facts, could be used in making the negligence determination in any area of law. Therefore, the analysis as to whether appellee used groundwater unreasonably in breach of its duty not to do so is tantamount to a negligence analysis. This is sufficient to meet the requirements of R.C. 2744.02(B)(2). Therefore, the trial court's decision granting appellee's motion for summary judgment based on the trial court's restrictive interpretation of R.C. 2744.02(B)(2) is incorrect.

{¶ 25} Appellee's immunity argument is based on the premise that negligence is the sole predicate to an exception from municipal immunity. Appellee did not assert that its use of the water supply at issue was reasonable and proffered no affidavits or other proper evidentiary material in support of the reasonableness of its use of that water supply. While, the trial court accepted appellee's no negligence argument, we do not agree for the reasons stated above. Since appellee proffered no sworn evidence on the unreasonable-use issue, as required under Civ.R. 56, this issue was not properly raised below by appellee for summary judgment adjudication. Therefore, appellants were under no obligation to submit affidavits or other evidential evidence as to this issue. This ruling, however, does not preclude the adjudication of this issue, by summary judgment or trial, in the future if properly brought before the court.

---

This ruling, however, does not preclude future adjudication of these issues if properly brought before the court.

{¶ 26} Since the trial court rendered its decision strictly on the basis of R.C. 2744.02(B)(2), this court does not have before it the trial court's ruling on the other arguments for summary judgment proffered by appellee. Without passing any judgment on those issues, the remand of this action to the trial court does not preclude the trial court from reviewing those arguments and adjudicating the remaining summary judgment issues raised by appellee.

{¶ 27} For the foregoing reasons, appellants' sole assignment of error is sustained. The judgment of the Portage County Court of Common Pleas is hereby reversed, and the cause is remanded for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

WILLIAM M. O'NEILL, P.J., concurs.

FORD, J., dissents.

DONALD R. FORD, J., dissenting.

{¶ 28} This writer dissents from the majority, which concluded that the judgment granting summary judgment in favor of appellee should be reversed and remanded. It is evident that appellants submitted no affidavits or other evidential material relating to the issue of immunity in response to appellee's motion for summary judgment.

{¶ 29} Further, appellants argued that the unreasonable use of water is always negligence, thus precluding the need to plead or prove negligence. Appellants' argument on appeal pertains only to the applicability of the doctrine of sovereign immunity that was asserted by appellee in its summary judgment motion. It is noted that appellants did not set forth any other claims that were argued by appellee in its summary judgment motion. In *Nelson v. Conneaut Twp. Park Dist. Bd. of Park Commrs.*, 11th Dist.App. No. 2001–A–0016, 2001-Ohio-7060, 2002 WL 5356, at ¶ 22, this court noted that the Supreme Court of Ohio had stated that, in order for local governments to continue to function effectively, some forms of municipal sovereign immunity must necessarily exist. Unless statutory immunity is provided, sovereign immunity is not available to a municipality in an action for damages alleged to be caused by the tortious conduct of the municipality. *Strohofer v. Cincinnati* (1983), 6 Ohio St.3d 118, 6 OBR 178, 451 N.E.2d 787, syllabus.

{¶ 30} It is also this writer's position that negligence is not an element of the tort of unreasonable use of groundwater pursuant to R.C. 1521.17(B). Neither the Supreme Court of Ohio decision that created the tort of unreasonable use of groundwater nor its progeny refer to negligence as an element of that tort. See

*Cline v. Am. Aggregates Corp.* (1984), 15 Ohio St.3d 384, 15 OBR 501, 474 N.E.2d 324, syllabus.

{¶ 31} Therefore, it is my view that appellee was entitled to summary judgment because appellants have not proven that appellee engaged in any negligent conduct to establish an exception to immunity under R.C. 2744.02(B)(2). Appellants merely chose to rely on allegations of unreasonable use in their complaint. Appellants' complaint did not allege that appellee's employees performed negligently in the pumping of groundwater. Furthermore, appellee's actions were discretionary decisions made by high-ranking officials engaged in policy making, which are immune under R.C. 2744.03(A)(3). Last, appellee's actions were immune under R.C. 2744.03(A)(5) as exercises of judgment in determining whether to acquire and how to use equipment, supplies, materials, personnel, facilities, and other resources, and appellants have not demonstrated malicious purpose, bad faith, or willful and wanton conduct in appellee's exercise of those functions.

{¶ 32} This writer also adds that in *Brady Lake v. Kent* (Nov. 3, 1995), 11th Dist. No. 94–P–0047, 1995 WL 803615, the plaintiffs' water wells at their individual residences went dry as the result of the defendant's pumping of ground water at its municipal well field. At the time the plaintiffs first discovered the problem, a cause of action for this type of injury could not be maintained under Ohio law. However, after the problem had been remedied, the Supreme Court recognized such a cause of action in *Cline,* supra. Eight years after *Cline,* the plaintiffs in the village of Brady Lake filed an action seeking damages for the loss of the well water, but the trial court dismissed the action because it was barred by the statute of limitations. This court agreed with the trial court and stated:

{¶ 33} "* * *[E]ven though *Cline* set forth a new common law ruling which is to be applied retrospectively, it did not commence a new period of limitation with respect to injuries which occurred and were completed prior to the announcement of the decision. * * * Therefore, even though [the plaintiffs] were not aware that they had a cause of action until the *Cline* decision in 1984, their cause of action arose in 1982 when they drilled new wells and their injuries ceased." Id. at 2 citing *Carter v. Am. Aggregates Corp.* (1992), 82 Ohio App.3d 181, 611 N.E.2d 512.

{¶ 34} Thus, pursuant to the 1995 *Brady Lake* decision, a cause of action accrues when the injury occurs, even if the cause of action has not been recognized under Ohio law at that time. Moreover, if the running of the applicable statute of limitations ends before the cause of action is recognized, the cause of action of the injured party is extinguished and cannot be resurrected even after the cause of action is recognized.

{¶ 35} The appellants in *Brady Lake* also argued that their claims were not time-barred because the acts of appellee, the city of Kent, constituted a continuing tort. We stated:

{¶ 36} "* * * Even if the doctrine of continuing tort applies, a cause of action accrues when a person suffers injury. Unless [the plaintiffs] established that they suffered injury within the limitations period, their claims are barred. * * *

{¶ 37} "The continuing injury to which [the plaintiffs] refer is damage to the quality of their water. Although the water quality issue was raised and supported on summary judgment, [the plaintiffs] did not allege these damages in their complaint. In their complaint, [the plaintiffs] allege damages relating only to water quantity, not quality. [The plaintiffs'] complaint alleges that [the defendant's] withdrawal of groundwater 'unreasonably restrained and interfered with the daily household and personal use of said water,' necessitated the drilling and installation of deeper wells, and caused the fair market value of their residences to depreciate. While the damages have been alleged in general terms, nothing has been alleged which is broad enough to encompass damages based on the quality of the water.

{¶ 38} "Therefore, [the plaintiffs'] damage claim is based on the quantity, not the quality, of their water supply. It is undisputed that [the plaintiffs] no longer suffer from dry wells. Therefore the continuing tort doctrine will not save their claims." Id. at 3.

{¶ 39} In the instant matter, it is this writer's view that appellants' contentions do not fit under any exception to immunity which is set forth in R.C. 2744.02(B)(2). It is also my position that immunity was granted to appellee as to its operation of a municipal corporation water supply company, and, pursuant to R.C. 2744.02(A)(1), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Thus, it is my opinion that appellants failed to satisfy their burden under Civ.R. 56(E) by setting forth specific facts to show that there was a genuine issue of material fact that remained to be litigated as did the appellants in the *Brady Lake* decision issued by this court in 1995. It would appear that appellants' ultimate solution to their plight lies with the legislature. For these reasons, I, therefore, dissent from the majority.